**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| IN RE:<br><br>JDI CUMBERLAND INLET, LLC<br><br>   Debtor. | CHAPTER 11<br><br>CASE NO:  25-55072-sms |

**CAMDEN COUNTY JOINT DEVELOPMENT AUTHORITY'S RESPONSE IN
OPPOSITION TO DEBTOR'S MOTION FOR ENTRY OF ORDER PURSUANT TO
BANKRUPTCY RULE 9018 AUTHORIZING ENTRY OF
A CONFIDENTIALITY ORDER**

Camden County Joint Development Authority (the "Development Authority") by and through undersigned counsel, hereby files this Response in Opposition to the Motion for Entry of Order Pursuant to Bankruptcy Rule 9018 Authorizing Entry of a Confidentiality Order (the "Motion") filed by JDI Cumberland Inlet, LLC ("Debtor"), and respectfully states as follows:

**I.      Preliminary Statement**

Debtor seeks entry of a confidentiality order pursuant to Rule 9018 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). However, the relief sought is overbroad, unsupported by specific factual justification, and inconsistent with the strong presumption in favor of public access to judicial records in bankruptcy proceedings. Debtor has failed to meet the legal burden necessary to justify the sealing or restriction of information in this case.

**II.      Procedural Background**

1

4926-5323-4252.2

1. On May 5, 2025, JDI Cumberland Inlet, LLC (the "**Debtor**") filed a voluntary bankruptcy petition under chapter 11 of the Bankruptcy Code (the "**Petition**"). (Doc. 1.)

2. The Debtor continues to manage its affairs as debtor and debtor-in-possession, pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

3. No creditors' committee or trustee has been appointed in this case.

### III. Background Facts

1. On June 18, 2025, the Development Authority filed its motion to designate nature of Debtor's business as a single asset real estate under 11 U.S.C. 101(51B) (Doc. 18) (the "SARE Motion").

2. On June 18, 2025, the Development Authority also filed its motion for Rule 2004 examination of Debtor and production of documents (Doc. 19) (the "2004 Motion") which 2004 Motion was granted on June 20, 2025, by the entry of this Court's order granting the 2004 Motion (Doc. 20) (the "2004 Order").

3. The 2004 Motion and specifically, paragraph 9 therein, contained the list of documents that the Development Authority sought the production of from Debtor.

4. On June 25, 2025, undersigned counsel for the Development Authority, Ed Rice, contacted counsel for Debtor to inquire whether there were any additional issues to be addressed in connection with the upcoming Rule 2004 examination and the related document production. Counsel for the Development Authority specifically requested that all issues pertaining to the examination be raised and resolved together to avoid piecemeal disputes or delay. In response, Debtor's counsel confirmed that the only outstanding issue concerned the location of the 2004 examination - specifically, whether it would take place in Camden County, Georgia or Atlanta,

2

4926-5323-4252.2

Georgia. Debtor's counsel did not raise any concerns at that time regarding confidentiality or the need for a protective or confidentiality order.

5. The 2004 exam, by agreement of Debtor and the Development Authority, is scheduled to take place on July 24, 2025. Pursuant to the 2004 Order, the deadline to produce the documents referenced in the 2004 Motion was five (5) business days before the examination (July 18, 2025). On the evening of July 21, 2025, counsel for Debtor advised counsel for the Development Authority of confidentiality concerns.

6. Debtor and the Development Authority were unable to agree to the need for a confidentiality order.

7. On July 22, 2025, Debtor filed the Motion along with an attached proposed order. The Motion takes issue with production requests number 1 though 4 and number 9 which are detailed below (Doc. 29, p. 1):

   a. All letters of intent, commitment letters, expressions of interest, or similar documents regarding refinancing the Loan;

   b. All letters of intent, commitment letters, expressions of interest, or similar documents regarding financing development of the Debtor's real property;

   c. All documents that the Debtor contends show its efforts to secure financing to develop the Debtor's real property in conformity with the Development Agreement or otherwise;

   d. All documents that the Debtor contends shows its efforts to raise additional capital to develop the Debtor's real property in conformity with the Development Agreement or otherwise; and

3

4926-5323-4252.2

    e. All plans, drawings, specifications, contracts, and subcontractors regarding development of Debtor's real property.

8. Jacoby Development Inc. ("Jacoby Development"), the City of St. Mary's, and the Development Authority entered into a Development Agreement (the "Development Agreement") dated September 16, 2020. Thereafter, Jacoby Development assigned the Development Agreement to the Debtor as developer but was not released of its obligations thereunder. The Debtor's Schedules reflect that Jacoby Development is the 100% equity interest holder in the Debtor. (Doc 11, p. 18.)

9. The Development Agreement provides the Development Authority with express right to audit the books and records of Debtor *which are related to the master project*. (Development Agreement, p. 29), § 4.2(d), 4.7). A true and accurate copy of the Development Agreement is attached hereto as Exhibit "A". The Development Agreement further requires that such books and records shall be maintained by Developer for a period of three years from the date of hereof unless a shorter period is authorized by the Development Agreement in writing. *Id.*

10. Consistent with the Development Agreement, the Development Authority issued its Series 2020 Bond, the proceeds of which were used, in part, to make a loan (the "Loan") to the Debtor for the acquisition of all or substantially all the subject property

11. Debtor executed a Guaranty in favor of the Development Authority pursuant to which it also absolutely and unconditionally guaranteed repayment of the Series 2020 Bond.

12. In connection with the Loan, among other things, Debtor executed in favor of the Development Authority that certain (i) fee and leasehold deed to secure debt and security

agreement (first priority) dated June 1, 2021, and recorded on July 2, 2021 in Deed Book 2128, Page 796, Camden County, Georgia real estate records ("Fee Deed"), and (ii) deed to secure debt and security agreement (second priority) dated June 1, 2021, and recorded on July 2, 2021, in Deed Book 2128, Page 837, Camden County, Georgia real estate records ("Second Priority Deed") (collectively with Fee Deed, the "Security Deeds"). True and accurate copies of the Security Deeds are attached hereto as Exhibit "B".

13. The Security Deeds expressly include as part of the collateral description the very property Debtor is seeking to subject to its confidentiality order: all right, title, and interest of Debtor in, to, and under all *plans, specifications,* surveys, studies, reports, permits, licenses, *agreements*, contracts, instruments, books of account, insurance policies, *and any other documents relating to the use, construction, occupancy, leasing, activity, or operation of the subject property*. (Fee Deed, p. 2, §A(vi); Second Priority Deed, p. 2. §A(v)).

## OBJECTION AND ANALYSIS

### I. Legal Standard.

"The limited case law interpreting 11 U.S.C. § 107 affirms that bankruptcy court records are presumptively open to the public and may be sealed only in rare and exceptional circumstances." *In re Analytical Sys., Inc.*, 83 B.R. 833, 835 (Bankr. N.D. Ga. 1987). Section 107(c) operates as narrow exceptions to both the common law right of access and the statutory mandate of public disclosure under § 107(a). "Bankruptcy Rule 9018 does not expand a bankruptcy court's ability to limit access to papers filed beyond the powers conferred in § 107, nor does it provide a separate basis for relief." *In re Anthracite Cap., Inc.*, 492 B.R. 162, 171

5

4926-5323-4252.2

(Bankr. S.D.N.Y. 2013) (citing *In re Gitto/Global Corp.*, 321 B.R. 367, 373 (Bankr.D.Mass.2005) and Fed. R. Bank. P. 9018 advisory committee's note ('This rule provides the procedure for invoking the court's power under § 107 of the Code.')).

In seeking to apply such exceptions, the burden is on the moving party to show that a request to place documents under seal falls within the parameters of an exception by demonstrating "'that the interest in secrecy outweighs the presumption' in favor of access." *See In re Continental Airlines*, 150 B.R. 334, 340 (D. Del. 1993) (internal citations omitted). This is consistent with the requirement of "good cause" made by the party seeking protection under Federal Rule of Civil Procedure 26, which governs protective orders in civil litigation. *Farnsworth v. Procter & Gamble, Co.,* 758 F.2d 1545, 1547 (11th Cir.1985) (citations omitted). Federal courts have superimposed a balancing of interests approach for Rule 26's good cause requirement. *Id*.

This standard requires the district court to balance the party's interest in obtaining access against the other party's interest in keeping the information confidential. *Id.* Under the rule governing protective orders, a movant must make a particularized showing of good cause, and a specific demonstration of fact by affidavit or testimony of a witness with personal knowledge, of the specific harm that would result from disclosure or loss of confidentiality; generalities, conclusory statements, and unsupported contentions do not suffice. Fed. R. Civ. P. 26(c). *Theriot v. Nw. Mut. Life Ins. Co.*, 382 F. Supp. 3d 1255 (M.D. Ala. 2019).

## II. Debtor Has Waived Its Right to Seek a Protective Order.

The Motion should be denied as untimely. On June 25, 2025, counsel for the Development Authority specifically reached out to Debtor's counsel to address all issues relating to the Rule 2004 examination, including document production and the scope of questioning. At

that time, Debtor's counsel confirmed that the only outstanding issue was the location of the 2004 examination. Debtor raised no concern about confidentiality, sensitive business information, or a need for a protective order until just days before the scheduled deposition. This delay is not just prejudicial but also undermines the transparency expected in bankruptcy proceedings

### III. Debtor Has Failed to Identify Any Specific Interest Warranting Protection.

Debtor has not articulated any specific interests to be protected or explained how the requested documents are confidential in a legally cognizable way. Instead, Debtor offers only blanket assertions that the documents are "proprietary" or "sensitive."

Generalized claims of confidentiality do not satisfy the burden required under Bankruptcy Rule 9018, and Federal Rule of Civil Procedure 26(c), incorporated into bankruptcy proceedings through Bankruptcy Rule 7026. Under the rule governing protective orders, a movant must make a particularized showing of good cause, and a specific demonstration of fact by affidavit or testimony of a witness with personal knowledge, of the specific harm that would result from disclosure or loss of confidentiality; generalities, conclusory statements, and unsupported contentions do not suffice. Fed. R. Civ. P. 26(c). *Theriot v. Nw. Mut. Life Ins. Co.*, 382 F. Supp. 3d 1255 (M.D. Ala. 2019). To date, the Debtor has provided **no affidavit**, **no evidence**, and **no specific explanation** as to what confidential information is at risk or why protection is necessary.

### IV. Much of the Requested Information Is Subject to Development Authority's Security Interests and Contractual Inspection Rights.

7

4926-5323-4252.2

The Development Authority holds a valid, perfected security interest in the Debtor's property and possesses contractual rights of inspection pursuant to governing loan and security documents. The information sought in the Rule 2004 request - including documents relating to the Debtor's assets, operations, and historical letter of intent activity - is not only relevant to this bankruptcy proceeding, but also falls squarely within the scope of the Development Authority's rights as a secured party.

Critically, the very documents Debtor now seeks to shield under a proposed protective order are those that the Development Authority is contractually entitled to access in its capacity as a secured party. These rights include (i) the right to inspect and review business records and financial data, and (ii) the right to enforce its remedies under applicable loan documents, including foreclosure. A protective order that restricts the Development Authority's ability to review and utilize such information would improperly curtail its collateral rights and undermine the bargained-for protections it secured prepetition.

Granting the requested protective order could impair Development Authority's bargained-for security interests and inspection rights, which exist independently of the bankruptcy proceeding and must be respected unless clearly overridden by compelling circumstances - which the Development Authority submits are not present here. Debtor has not shown that honoring those rights would cause undue burden or compromise any legitimate interest.

**V. <u>The Letters of Intent in Question Are No Longer Active and Do Not Justify Secrecy.</u>**

8

Debtor has vaguely asserted that disclosure of letters of intent would harm potential negotiations or affect value. However, the record shows that the requested letters of intent regard abandoned transactions and are likely no longer viable. It is unclear what, if any, confidential business interest remains to be protected regarding these documents that reference past proposed transactions that have been abandoned. These letters of intent are further well within the scope of documents to which the Development Authority has rights under the Development Agreement, Loan Agreement, and Deeds to Secure Debt. To the extent that any letter of intent remains in discussion, Debtor should be required to detail the particularized harm the Debtor's estate will suffer if the document is not kept confidential. The vague generalities presented so far are legally insufficient.

## VI. The Protective Order Would Conceal Relevant Information and Undermine Transparency.

Debtor's claim that its property holds significant value directly raises a critical question: What bona fide offers, if any, has the Debtor received and rejected? That information is central to Development Authority's ability to evaluate the Debtor's conduct, asset valuation, and overall bankruptcy strategy. Shielding that information through a blanket protective order would obstruct legitimate inquiry. This is particularly troubling in the bankruptcy context, where transparency is a guiding principle.

Furthermore, the relief sought in the Motion contradicts the proposed order. The Motion takes issue with document requests 1-4 and 9, whereas the proposed order's scope is defined as: "… all documents produced in discovery, all responses to discovery requests, all deposition or Rule 2004 testimony, and exhibits and any other materials which may be subject to discovery…" (Doc. 29, p. 7). The proposed order essentially makes any document (whether it should be

9

protected or not) subject to confidentiality. Furthermore, the Debtor is the sole arbiter under the proposed order in determining what documents should be designated as "Confidential – Attorney's Eyes Only." (*Id.* at p. 8). Once the designation is effectuated, the Development Authority's counsel cannot even disclose the documents to its own client. This proposed order ignores the reality that these very documents are subject to Development Authority's security interest and inspection rights.

WHEREFORE, for the foregoing reasons, the Development Authority respectfully requests that the Court deny the Motion or, in the alternative, require a much more narrowly tailored order supported by specific factual justifications, with consideration of less restrictive alternatives while preserving the Development Authority's rights in the requested documents.

BRADLEY ARANT BOULT CUMMINGS LLP

*/s/ Bryan E. Bates*
Ga. Bar No. 140856
1230 Peachtree St., NE, Suite 2100
Atlanta, GA 30309
P: (404) 868-2794
F: (404) 868-2100
E:  bebates@bradley.com


*/s/ Edwin G. Rice*
Edwin G. Rice
Florida Bar No. 855944
1001 Water Street, Suite 1000
Tampa, FL  33602
Phone: (813) 559-5500
Facsimile: (813) 229-5946
Primary email: erice@bradley.com
Secondary email: ajecevicus@bradley.com
**Pro hac vice**

**/s/** *Doroteya N. Wozniak*
Georgia Bar No. 627491

10

4926-5323-4252.2

1230 Peachtree St., NE, Suite 2100
Atlanta, GA 30309
Phone: (404) 868-2794
Facsimile: (404) 868-2100
Email:  dwozniak@bradley.com


*Counsel for Camden County Joint Development Authority*

11

4926-5323-4252.2

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 23, 2025, a true and correct copy of Response in Opposition to Debtor's Motion for Entry of Order Pursuant to Bankruptcy Rule 9018 Authorizing Entry of a Confidentiality Order has been filed electronically with the Court's Pacer CM/ECF electronic filing system which will provide a copy to all counsel of record. Additionally, a copy has been sent U.S. Mail to all interested parties on the Mailing Matrix attached hereto on the following:

JDI Cumberland Inlet, LLC
8200 Roberts Drive
Suite 475
Atlanta, Georgia 30350-4132

By: /s/ *Doroteya N. Wozniak*
Doroteya N. Wozniak
Georgia Bar No. 627491
1230 Peachtree St., NE, Suite 2100
Atlanta, GA 30309
Phone: (404) 868-2794
Facsimile: (404) 868-2100
Email: dwozniak@bradley.com

4926-5323-4252.2