**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| IN RE: | CHAPTER 11 |
| JDI CUMBERLAND INLET, LLC | CASE NO: 25-55072-sms |
| Debtor. | |

## CAMDEN COUNTY JOINT DEVELOPMENT AUTHORITY'S OBJECTION TO PLAN CONFIRMATION

Camden County Joint Development Authority (the "**Development Authority**") objects to confirmation of the proposed plan of reorganization (the "**Plan**") (Doc. 48) filed by JDI Cumberland Inlet, LLC (the "**Debtor**") on the following grounds:

### Preliminary Statement

As set forth in Development Authority's Motion to Dismiss (Doc. 41), this Bankruptcy Case was commenced in bad faith, which independently bars confirmation of the Plan. This single-asset case reveals no legitimate reorganization purpose. Instead, the Plan was conceived and filed solely to obstruct and delay Development Authority's rights. The proposed Plan does not seek to adjust any debtor/creditor relationships, does not propose a sale or liquidation of the Debtor's asset, nor does it propose to surrender collateral in satisfaction of debt. Rather, the Plan proposes substantial and prejudicial delay premised on the speculative hope that an as-yet unidentified investor might infuse sufficient capital to pay creditors. Such conjectural and unsupported delay

tactics fall far short of the good faith required under the Bankruptcy Code and should not be allowed.

For years, the Debtor has known that it would be required to sell portions of its property, obtain additional financing, or secure additional capital in order to service the bond debt that enabled the Debtor to purchase its single real estate asset. Yet, despite ample time, the Debtor has done none of these things.  The Plan before the Court seeks nothing more than additional time to attempt to accomplish what the Debtor has long known was required of it, yet failed to successfully accomplish during years of opportunity. Unfortunately, this continued delay is unwarranted and extremely prejudicial to the Development Authority, which is called upon to make payments on the Series 2020 Bond.

Additionally, as discussed below, the Plan is not confirmable because: (1) it is not feasible as required by section 1129(a)(11) of the Bankruptcy Code; (2) it is not "fair and equitable" as required by section 1129 (b)(1) and (2) of the Bankruptcy Code; and (3) it does not address the substantial economic consequences associated with assumption or rejection of the executory Development Agreement.

In short, this single asset Debtor is not and never was a viable candidate for chapter 11 relief. Instead of serving any legitimate purpose, this case is being wielded as a sword against the Development Authority, forcing it to shoulder the burdens of the Debtor's inaction while the Debtor enjoys the protections of the automatic stay. As addressed in more detail below, confirmation of the Plan should be denied and the Bankruptcy Case should be dismissed.

2

**Procedural History**

1.     On May 5, 2025, the Debtor filed its voluntary bankruptcy petition under chapter 11 of the Bankruptcy Code (the "**Petition**") which initiated this chapter 11 bankruptcy case (the "**Bankruptcy Case**"). (Doc. 1).

2.     The Debtor continues to manage its affairs as a debtor-in-possession, pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

3.     No creditors' committee or trustee has been appointed in this case.

4.     On May 22, 2025, the Debtor filed its bankruptcy schedules and statement of financial affairs (the "**Schedules**"). (Doc. 11).

5.     On June 30, 2025, the Office of the United States Trustee conducted the section 341 meeting of creditors at which the Debtor's representative James F. Jacoby testified on behalf of the Debtor under oath. A true and correct copy of the transcript from the 341 meeting of creditors (the "**341 Transcript**") is attached as Exhibit "A" to the Motion to Dismiss (defined below) and incorporated in its entirety into this Objection by reference.

6.     On July 24, 2025, the Development Authority began conducting its examination of the Debtor pursuant to Bankruptcy Rule 2004. A true and correct copy of the transcript from the Rule 2004 examination (the "**2004 Transcript**") is attached as Exhibit "B" to the Motion to Dismiss (defined below) and incorporated in its entirety into this Objection by reference.

7.     On July 29, 2025, the Court entered its Consent Order Granting Motion to Designate Nature of Debtor's Business as Single Asset Real Estate Under 11 U.S.C. 101(51B) and Setting Related Deadlines (the "**SARE Order**") pursuant to which the Court, among other things,

3

determined that the Debtor's business is single asset real estate as defined by section 101(51B) of the Bankruptcy Code. (Doc. 35).

8.    On August 20, 2025, the Development Authority filed its Motion of Camden County Joint Development Authority to (I) Dismiss Case; or (II) Alternatively, Grant Relief from the Automatic Stay (Doc. 41) (the "**Motion to Dismiss**"). The Motion to Dismiss is set for hearing on October 15, 2025, at the same time the Court is scheduled to consider confirmation of the Plan.

9.    The Motion to Dismiss is supported by, among other things, the Affidavit of James M. Coughlin in Support of the Camden County Development Authority's Motion to Dismiss Bankruptcy Case, and the exhibits referenced and attached therein (the "**Coughlin Affidavit**"). (Doc. 42). In support of this Objection, the Development Authority hereby incorporates by reference the Coughlin Affidavit as if fully restated herein.

10.    On September 3, 2025, the Debtor filed the Plan and Disclosure Statement, outlining the treatment of the Development Authority's claim.  (Doc. 48 and 49).

11.    On October 6, 2025, the Development Authority filed its proof of claim (Claim No. 6-1) setting forth it fully secured claim that is due and owing under the Loan Documents (as defined below) as of September 30, 2025, in the amount of $10,134,270.03.[1]

## **Factual Background**

**A.    The Debtor's Assets and Operations.**

---

[1] The Schedules reflect that the Development Authority holds a secured claim that is not contingent, unliquidated or disputed in the amount of $9,386,336.58 that is secured by the Real Property. (Doc. 11, at 9).

4909-9303-7162.6

12.     The Debtor's only asset (except for $11,784.84 of cash held in a checking account and a $1,145.00 security deposit) is an undeveloped contiguous tract of land in Camden County, Georgia (the "**Real Property**"). (Doc. 11, at 1–2, 6; 2004 Transcript 8:21–9:7, 16:13–17). The Debtor has no ongoing business operations beyond its passive ownership of the undeveloped Real Property. The Debtor employees no personnel, generates no income, and produces no cash from operations or otherwise. (Doc. 11, at 20; 341 Transcript 20:10–12; 2004 Transcript 48:4–14).

**B.   The Loan.**

13.     The Development Authority is a joint development authority duly organized and validly existing under the Constitution and laws of the State of Georgia, including the Development Authorities Law (O.C.G.A. § 36-62-1, et seq., as amended from time to time) (the "**Act**"). The Development Authority was created and enacted pursuant to the Act for the purpose of promoting trade, commerce, industry, and employment opportunities for the public good and general welfare and for the purpose of promoting the general welfare of the State of Georgia, specifically in Camden County, Georgia.  Pursuant to the Act, the Development Authority has the power, to among other things, borrow money in furtherance of its public purposes and to use the proceeds thereof for a project for any industrial, commercial, business, office, parking, public, or other use.

14.     Pursuant to this authority, the Development Authority entered into a Development Agreement (the "**Development Agreement**") dated September 16, 2020, with the City of St.

5

Marys, Georgia and Jacoby Development Inc. ("**Jacoby Development**")[2] which sets forth the parties' agreement regarding the development of the developable portion of the Real Property (the "**Development Property**") into a "Master Project."[3] (Coughlin Aff.¶ 4).

15.    Jacoby Development thereafter assigned the Development Agreement to the Debtor pursuant to an Assignment and Assumption of Development Agreement dated June 1, 2021, (the "**Assignment**") but Jacoby Development was not released of its obligations thereunder.  (Coughlin Aff. ¶ 5).

16.    Consistent with the Development Agreement, the Development Authority adopted a bond resolution on August 25, 2020, and a supplemental resolution on June 10, 2021, (the "**Bond Resolutions**") authorizing it to issue Taxable Industrial Development Revenue Bonds, Series 2020, in the original principal amount of $10,848,500 (the "**Series 2020 Bond**") to, among other things, finance the Debtor's acquisition of the Development Property for development as provided in the Development Agreement.  (Coughlin Aff. ¶ 6).

17.    Pursuant to the Bond Resolutions, the Development Authority issued its Series 2020 Bond, the proceeds of which were used, in part, to make a loan to the Debtor for the acquisition of Development Property (the "**Loan**"). Contractual principal and interest payments

---

[2] Jacoby Development owns 100% of the equity interest in the Debtor. (Doc. 11, at 18; 2004 Transcript 41:1–3). James F. Jacoby owns 100% of the equity interest in Jacoby Development. (2004 Transcript 43:21–44:2).
[3] The Development Property consists of approximately 560 acres. That portion of the Real Property that is not the Development Property is undevelopable salt marsh along the North River in Camden County consisting of approximately 740 acres (the "**Salt Marsh**"). The Development Authority does not believe that the Salt Marsh has meaningful economic value to the Debtor.

4909-9303-7162.6

on the Loan are to be used to fund the payments due on the Series 2020 Bond.  (Coughlin Aff. ¶ 7).

18.    In connection with the Loan, the Debtor and Development Authority entered into a Loan Agreement dated as June 1, 2021 (the "**Loan Agreement**").  (Coughlin Aff. ¶ 8).

19.    The Loan is further evidenced by, among other things, a Promissory Note executed by the Debtor in favor of the Development Authority, dated June 1, 2021 (the "**Promissory Note**"). (Coughlin Aff. ¶ 9).

20.    The Debtor also executed a Guaranty dated June 1, 2021 (the "**JDI Guaranty**") in favor of the Development Authority pursuant to which it, among other things, "absolutely and unconditionally" guaranteed repayment of the Series 2020 Bond as described therein.  (Coughlin Aff. ¶ 10).

21.    On June 1, 2021, Jacoby Development executed a Guaranty (the "**Jacoby Guaranty**") pursuant to which it absolutely and unconditionally guaranteed, among other things, the Debtors obligations under the Loan Documents, which includes, among other things, repayment of the Loan and the Series 2020 Bond.  (Coughlin Aff. ¶ 11).

22.     The Loan and all other obligations of the Debtor under the Loan Documents (as defined below) are secured pursuant to a Fee and Leasehold Deed to Secure Debt and Security Agreement (First Priority) dated June 1, 2021, (the "**First Priority Instrument**") executed by the Debtor in favor of the Development Authority and recorded with the Clerk of Court for Camden County, Georgia in Book 2128, beginning on Page 796.  (Coughlin Aff. ¶ 12).

4909-9303-7162.6

23.     The Loan and all other obligations of the Debtor under the Loan Documents are further secured pursuant to a Fee and Leasehold Deed to Secure Debt and Security Agreement (Second Priority) dated June 1, 2021, (the "**Second Priority Instrument**") executed by the Debtor in favor of the Development Authority and recorded with the Clerk of Court for Camden County, Georgia in Book 2128, beginning on Page 837. The First Priority Instrument and the Second Priority Instrument are collectively referred to as the "Instruments." (Coughlin Aff. ¶ 13). The Instruments, among other things, grant the Development Authority liens covering the Development Property.[4]

24.     The Loan and all other obligations of the Debtor under the Loan Documents are further secured pursuant to an Assignment of Leases and Rents (First Priority) executed by the Debtor in favor of the Development Authority dated June 1, 2021 (the "**First Priority Assignment of Leases and Rents**") and recorded with the Clerk of Court for Camden County, Georgia in Book 2128, beginning on Page 819. (Coughlin Aff. ¶ 14).

25.     The Loan and all other obligations of the Debtor under the Loan Documents are further secured pursuant to an Assignment of Leases and Rents (Second Priority) executed by the Debtor in favor of the Development Authority dated June 1, 2021, (the "**Second Priority Assignment of Leases and Rents**") and recorded with the Clerk of Court for Camden County, Georgia in Book 2128, beginning on Page 859. The First Priority Assignment of Leases and Rents

---

[4] Matsco Incorporated ("Matsco") holds a first lien on approximately 21 acres of the Development Property to secure its loan (the "Matsco Collateral"). The Development Authority's holds a second lien on the Mastco Collateral pursuant to the Second Priority Instrument, the Second Priority Assignment of Leases and Rents, and subordination attached to Matsco's security deed recorded with the Clerk of Court for Camden County, Georgia in Book 2330, beginning on Page 159. The Development Authority holds a first lien on Development Property, except for the Matsco Collateral.

4909-9303-7162.6

and the Second Priority Assignment of Leases and Rents are collectively referred to as the "Assignments." (Coughlin Aff. ¶ 15).

26.      The liens and security interests granted pursuant to the Instruments and Assignments cover all or substantially all the Development Property. (Coughlin Aff. ¶ 16).

27.      The Debtor's obligations under the Loan Documents are further secured pursuant to a Collateral Assignment of Government Authorizations (the "**Collateral Assignment**") executed by the Debtor in favor of the Development Authority dated June 1, 2021. (Coughlin Aff. ¶ 17).

28.      The term "Loan Documents" includes the Development Agreement, the Loan Agreement, the Promissory Note, the JDI Guaranty, the Jacoby Guaranty, the Instruments, the Assignments, the Collateral Assignment, and any other written agreements executed in connection with the Loan. (Coughlin Aff. ¶ 18).

29.      Pursuant to an Intergovernmental Contract dated June 1, 2021, between Camden County and the Development Authority, executed in connection with the Loan and the issuance of the Series 2020 Bond, Camden County is obligated – subject to certain conditions and limitations – to pay the Series 2020 Bond in the event the Debtor and Jacoby Development default or otherwise fail to perform under the JDI Guaranty and the Jacoby Guaranty to pay the Series 2020 Bond. (Coughlin Aff. ¶ 19).

**C.  Loan Defaults and Non-Judicial Foreclosure.**

30.      The Debtor defaulted on its obligations under the Loan Documents by, among other things, failing to make payments to the Development Authority when required under the Loan

9

Documents. The Debtor's first payment default occurred when the Debtor failed to timely pay the principal and interest payment due on the Loan on August 15, 2024, in the amount of $763,648.75 ($192,675 interest and $570,973.68 principal). Consequently, the Development Authority was forced to make the corresponding payment on the Series 2020 Bond due September 1, 2024, in the amount of $763,648.75. The Debtor did not pay the installment due on August 15, 2024 until October 21, 2024.[5]  (Coughlin Aff. ¶ 21).

31.     The Debtor subsequently defaulted on the next payment installment due under the Loan on February 15, 2025, in the amount of $181,341.24. As a result, the Development Authority was forced again to make the corresponding payment on the Series 2020 Bond due March 1, 2025, in the amount of $181,341.24.  (Coughlin Aff. ¶ 22).

32.     On or about February 21, 2025, as a result of the payment defaults, the Development Authority provided the Debtor with Notice of Default and accelerated the amounts due under the Loan Documents (the "Default Letter") because of the Debtor's failure to make the February 15th payment.  (Coughlin Aff. ¶ 23).

33.     The Development Authority received no response to the Default Letter and on March 28, 2025, sent Debtor, among others, Notices of Foreclosure Sale (the "Foreclosure Sale Notices") that notified Debtor of the non-judicial foreclosure sales regarding the Security Instruments and the Development Property scheduled for the first Tuesday in May 2025 (May 6, 2025).  (Coughlin Aff. ¶ 24).  Importantly, the Debtor filed its Bankruptcy Case the day before the

---

[5] Loan payments are due on February 15th and August 15th.  The corresponding payments on the Series 2020 Bond are due on March 1st and September 1st.  (Coughlin Aff. ¶ 20).

4909-9303-7162.6

scheduled non-judicial foreclosure on May 5, 2025 with the specific intent to delay the foreclosure

sales. (341 Transcript 19:6–11; 2004 Transcript 17:17–24).

<u>**OBJECTIONS**</u>

**A.   The Plan Cannot be Confirmed Because the Bankruptcy Case Was Not
Filed in Good Faith.**

34.     "Section 1129(a) provides that 'The court shall confirm a plan only if all of the

following requirements are met . . . .' 11 U.S.C. § 1129(a)."  *In re Diplomat Constr., Inc.*, No. 09-

68613-MGD, 2009 WL 6498180, at *2 (Bankr. N.D. Ga. Nov. 20, 2009). "To confirm a plan of

reorganization, the debtor has burdens as to introduction of evidence and persuasion that each

subsection of section 1129(a) has been satisfied." *Id.*

35.     As set forth in the Motion to Dismiss, the Bankruptcy Case was not filed in good

faith which constitutes "cause" for dismissal of this case pursuant to 11 U.S.C. § 1112(b)(2). The

Development Authority incorporates by reference the grounds and arguments set forth in its

Motion to Dismiss establishing that the Bankruptcy Case was not filed in good faith.

36.     Because the Bankruptcy Case was not filed in good faith, the Plan is tainted and

cannot be confirmed. *See generally*, *In re Phoenix Piccadilly Ltd.*, 849 F.2d 1393, 1394-95 (11th

Cir. 1988).

**B.   The Plan is Not Proposed in Good Faith.**

37.     The Plan fails to satisfy the good faith requirement of 11 U.S.C. § 1129(a)(3), which

requires the Plan be "proposed in good faith and not by any means forbidden by law."

11

38.     The Bankruptcy Code does not define the term "good faith", but "… courts have interpreted 'good faith' as requiring that there is a reasonable likelihood that the plan will achieve a result consistent with the objectives and purposes of the Code." *McCormick v. Banc One Leasing Corp. (In re McCormick)*, 49 F.3d 1524, 1526 (11th Cir. 1995).

39.     In assessing whether the plan was proposed in good faith, the assessment is focused on the plan itself, while also considering the totality of circumstances surrounding the plan. *Kaiser Aerospace & Elec. Corp. v. Teledyne Indus. (In re Piper Aircraft Corp.)*, 244 F.3d 1289, 1300 (11th Cir. 2001) (citing *In re McCormick*, 49 F.3d at 1526). The good faith requirement is met where the plan is proposed with a "legitimate and honest purpose to reorganize and has a reasonable hope of success." *Id*. (citations omitted).

40.     The Plan does not contemplate a legitimate reorganization of the Debtor's financial affairs nor does it provide for a meaningful liquidation of assets or the surrender of collateral to satisfy creditor claims. Instead, the Plan preserves the status quo, leaving debtor-creditor relationships untouched, and offering no substantive adjustment, resolution, or path toward repayment. The Plan is stall tactic which results in continued delay and undue prejudice upon the Development Authority. This is not good faith. Such conduct falls far short of the statutory mandate of good faith.

41.     Specifically, Section 4.04 of the Plan, which addresses the Development Authority's plan treatment, provides that the Debtor will pay the JDA Allowed Secured Claim in full on the Effective Date from Investment Proceeds and if it not paid in full on the Effective Date,

the Development Authority shall have stay relief to pursue its rights against the Debtor and the Property.

42.     Importantly, "Effective Date" is defined to mean "the first Business Day occurring on the ninetieth (90th) day after Confirmation Order becomes a final, non-appealable order." Based on the Plan confirmation hearing date, this structure ensures that the Development Authority will be stayed under the Plan until at least mid-January 2026.  By that time, the Development Authority will be staring down the barrel of having to make another bond payment in March 2026.  This artificial and baseless delay leaves the Development Authority with no time to exercise its state law remedies, liquidate its collateral and apply the proceeds from such liquidating towards the bond payments.   In effect, this unnecessary delay artificially suspends the Development Authority's remedies at a time when the Development Authority will need them the most, thereby compounding the prejudice and further evidencing the Plan's lack of good faith.

43.     The Plan also provides that the "Debtor shall continue to pay all interest payments due the JDA during the Bankruptcy Case prior to the Effective Date."  This is a meaningless promise.  Under the Loan Documents, normal contractual payments are due on a bi-annual basis, with the next payment not coming due until February 15, 2026 – well after the anticipated Effective Date.  Thus, the Plan provides no interim protection to the Development Authority which is forced to stand idle, receive no payments, and shoulder yet another bond payment – all while the Debtor prolongs its speculative pursuit of investors that, to date, have failed to materialize.

44.     Moreover, the funding of the Plan is illusory. "Investment Proceeds" is defined to mean "funds provided to the Debtor by a third party to satisfy all payments under the Plan." The

13

Plan and Disclosure Statement, however, fail to identify any such third-party funder. Moreover, neither document contains any concrete information regarding the status of investor funding. No written agreement or term sheet is attached to the Plan or Disclosure Statement that addresses the funding. The Plan and Disclosure Statement do not provide any terms regarding the funding, including timing of the funding. Nor is any hint given regarding the likelihood of the funding.

45.     This complete lack of detail regarding funding is very concerning because the Debtor has for years provided unfulfilled assurances to the Development Authority of imminent transactions that were supposed to fund the Loan but never did. That pattern has persisted in this case; for more than two (2) months, the Development Authority has been told that the Debtor has secured (or is about to secure a funding source), yet no supporting evidence has been produced. While the Development Authority is desperate to believe in a funder to pay off the Loan, statements of prospective funding ring hollow given the numerous past assurances of funding that never came to fruition and the complete lack of detail regarding the funding. The Plan's assurances of an investor remain wholly unsubstantiated, rendering the alleged funding as elusive as ever.

46.     Equally troubling is, that beyond the numerous deficiencies already identified, the Plan preserves Debtor's ability to inflict further delay even after the Effective Date. The Plan does not provide for any surrender or transfer of the Development Property to the Development Authority if Debtor's efforts to find yet another investor fail again. Rather, the Development

14

Authority is only provided relief from the automatic stay.[6] Presumably the Debtor intends further

litigation in state court. Otherwise, it would just surrender collateral to its secured creditors.

47.     In summary, the Debtor's plan offers nothing more than yet another delay – coupled

with some limited (illusory) prosect of payment.  If payment in full does not occur, then the Plan

provides only stay relief.  This is not a legitimate plan of reorganization, nor is it a proper use of

Chapter 11.  It is, instead, a single asset real estate debtor leveraging the automatic stay, without

any genuine effort to restructure or satisfy the creditors' claims.  This is not an appropriate use of

Chapter 11.  This is not good faith.

**C.  The Plan is Not Feasible.**

48.     The Plan is not feasible as required by section 1129(a)(11) of the Bankruptcy Code

because funding of the Plan is illusory.

49.     Section 1129(a)(11) states that "[c]onfirmation of the plan is not likely to be

followed by the liquidation, or the need for further financial reorganization, of the debtor or any

successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the

plan."

50.     When interpreting the requirement of Section 1129(a)(11), the Northern District of

Georgia Bankruptcy Court has found:

> The use of the word, likely, requires the Court to assess whether the plan
> offers a reasonable probability of success, rather than a mere possibility.
> While § 1129(a)(11) does not require the debtor to guarantee success,
> establishing  feasibility  requires  more  than  a  promise,  hope,  or

---

[6] Section 11.05 of the Plan provides for a permanent injunction upon entry of the Confirmation Order.  Although the Plan does not so state, presumably the Development Authority will be free of the post-confirmation injunction if it is not paid in full by the Effective Date.

unsubstantiated prospect of success. The purpose of the feasibility requirement [ ]is to prevent confirmation of visionary schemes which promise creditors and equity holders more under a proposed plan that the debtor can possibly attain after confirmation. … A determination of feasibility must be firmly rooted in predictions based on objective fact. Plans that involve pipe dreams or visionary schemes are not confirmable. Courts consider the earning power of the business, its capital structure, the economic conditions of the business, the continuation of present management, and the efficiency of management in control of the business after confirmation to determine feasibility of the plan.

*In re Diplomat Constr., Inc.,* *2–3 (internal quotations and citations omitted).

51.     In *In re Diplomat Construction Inc.*, the Court denied confirmation of the debtor's plan based on feasibility concerns due to the debtor's unsuccessful efforts to secure financing and inability to close the sale of its hotel property.  *Id.* at *3-4.

52.     As addressed above, the Plan and Disclosure Statement fail to provide any terms or other details regarding the Plan funding. Indeed, the third-party funder is not even identified as it likely does not currently exist. Moreover, there is no written agreement or term sheet attached to the Plan that provides for a commitment to fund or that otherwise addresses the funding.

**D.  The Plan is Not Fair and Equitable.**

53.     The Plan is not "fair and equitable" as required by section 1129(b)(1) and (2) of the Bankruptcy Code.  The debtor has the burden of establishing that the plan is fair and equitable.  *Id.* at *5.

54.      Under the Plan, the "Effective Date" is pushed out at least 104 days from entry of the confirmation order (perhaps longer) for purpose of delay. While the Development Authority is left uncompensated on its secured claim for at least three and a half months and perhaps much

16

longer, Debtor will be allowed to continue controlling the Property without having to make any payments to the Development Authority without any meaningful and legitimate reason.

55.      Consequently, the Plan is not "fair and equitable" as required by section 1129(b)(1) because it unfairly and inequitably pushes out the "Effective Date" to unduly delay the Development Authority of its right to be compensated on its allowed secured claim or otherwise enforce its Loan Documents.[7]

**E. The Plan Fails to Adequately Address Assumption or Rejection of the Development Agreement.**

56.      The Plan fails to adequately address assumption or rejection of the Development Agreement which renders the Plan unconfirmable. *See* 11 U.S.C. § 1129(a)(2).

57.      The Development Agreement is undoubtedly an executory contract. Importantly, the Debtor has consistently failed to perform under the Development Agreement. Indeed, the Development Agreement was executed over five (5) years ago, however, the Debtor has yet to break ground on development.

58.      Section 8.01 of the Plan provides:

> "**Section 8.01 Assumption.**  Any executory contracts and unexpired leases that have not been previously assumed or rejected shall be deemed assumed and assigned to the Purchaser on the date of closing of the Sale."

59.      As threshold matter, the Plan does not propose a sale of assets to a "Purchaser." Indeed, "Purchaser", although capitalized in section 8.01 of the Plan, is not a defined term.[8]

---

[7] The Development Authority also submits that the calculated delay in setting the "Effective Date" so far in the future is itself evidence of bad faith, especially in the context of a single asset real estate case.
[8] The term "Sale" likewise is a capitalized term in section 8.01 of the Plan but is not a defined term under the Plan.

Rather, the Plan is to be funded by "Investment Proceeds" provided to the Debtor by an unidentified "third party." Accordingly, the assignment and assumption provisions set forth in Section 8.01 is seemingly meaningless.

60.    More importantly, if the Development Agreement is to be assumed and assigned, then the threshold requirements of § 365(b)(1) for curing, or promptly curing, defaults under the Developmental Agreement and Loan Documents must be satisfied.  The Plan is devoid of any provision setting forth the Debtor's intent to cure the delinquencies under its agreement with the Developmental Authority before the Court can authorize its assignment.

61.    Further, the Plan should address proposed adequate assurance of future performance as required by section 365(b)(1) of the Bankruptcy Code. Given the Debtor's complete lack of performance under the Development Agreement to date and the Plan's failure to address funding of the development required by the Development Agreement, the Plan is unconfirmable if the Development Agreement is to be assumed.

62.    Conversely, there are severe economic consequences if the Debtor rejects the Development Agreement. Rejection would give rise to a very large claim for damages in favor of the Development Authority. *See* 11 U.S.C. § 365(g). Such a claim for damages would also be a secured claim under the Loan Documents.[9]

63.    In short, the Plan is unconfirmable because it does not account for the significant additional funding required to: (1) address curing and future assurances if the Development

---

[9] The Instruments secure, among other things, the Debtor's obligations under the Loan Documents, which include the Debtor's obligations under the Development Agreement. Consequently, the damages for breach of the Development Agreement that would arise from rejection would be a secured claim.

Agreement is assumed; or (2) pay a secured claim for damages if the Development Agreement is rejected.[10]

### D. The Development Authority's Secured Claim is Impaired.

64.     In section 4.04(a) of the Plan, the Debtor asserts that the Development Authority's secured claim is "Unimpaired." The Development Authority objects to classification of its claim as unimpaired. The Debtor does not seek to cure defaults and reinstate the maturity of the Loan in conformity with section 1124(2) of the Bankruptcy Code. More importantly, the Plan alters the legal, equitable, and contractual rights of the Development Authority by utilizing the automatic stay post-confirmation to substantially delay the Development Authority from enforcing its rights under its Loan Documents and applicable non-bankruptcy law. Accordingly, the Development Authority's secured claim is impaired. 11 U.S.C. § 1124(1).[11]

### CONCLUSION

WHEREFORE, the Development Authority respectfully request the Court to (1) sustain this objection, (2) deny confirmation of the Plan, (3) dismiss the Bankruptcy Case as requested in the Motion to Dismiss, and (4) grant such further relief as the Court determines necessary and appropriate.

---

[10] Pursuant to section 365(d)(2), a debtor may assume or reject an executory contract under chapter 11 at any time before confirmation of a plan. The Development Authority objects to the Plan to the extent the Debtor seeks to defer assumption or rejection until after confirmation.

[11] Interestingly, Class 3 General Unsecured Claims, which are treated the same as the Development Authority's secured claim (i.e. payment in full on the Effective Date from Investment Proceeds), are classified as "Impaired and entitled to vote on the Plan." This attempt to deprive the Development Authority of its voting right on the Plan is yet further evidence that the Plan was not filed in good faith.

Dated:  October 7, 2025

**BRADLEY ARANT BOULT CUMMINGS LLP**

*/s/ Doroteya N. Wozniak*
Doroteya Wozniak
Georgia Bar No. 627491
Bryan Bates
Ga. Bar No. 140856
1230 Peachtree St., NE, Suite 2100
Atlanta, GA 30309
P: (404) 868-2794
F: (404) 868-2100
Email:   bebates@bradley.com
           dwozniak@bradley.com

and

*/s/ Edwin G. Rice*
Edwin G. Rice, Esq.
Florida Bar No. 855944
Thousand & One
1001 Water St., Suite 1000, Tampa, FL 33602
T: (813) 559-5500
F: (813) 229-5946
Primary email:  erice@bradley.com
Secondary email:  ajecevicus@bradley.com
***Pro hac vice***

*Counsel for Camden County Joint Development Authority*

20

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 7, a true and correct copy of Camden County Joint Development Authority's Objection Plan Confirmation has been filed electronically with Court's PACER CM/ECF electronic filing system which will provide a copy of this filing to all counsel of record.  Additionally, a copy has been sent U.S. Mail to all interested parties on the Mailing Matrix attached hereto on October 7, 2025.

*/s/ Doroteya N. Wozniak*
Doroteya N. Wozniak
Georgia Bar No. 627491

4909-9303-7162.6

```
Label Matrix for local noticing        AKM Surveying, Inc.                    Bryan E. Bates
113E-1                                  PO Box 5730                            Bradley Arant Boult Cummings LLP
Case 25-55072-sms                       Saint Marys, GA 31558-5730             Promenade Tower, Ste 20th Floor
Northern District of Georgia                                                   1230 Peachtree Street NE
Atlanta                                                                        Atlanta, GA 30309-3574
Tue Oct  7 12:34:24 EDT 2025


Ron C. Bingham II                       Brasfield & Gorrie, LLC                Camden County Joint Development Authority
Adams and Reese LLP                     3021 7th Avenue South                  531 N. Lee Street
Suite 1750                              Birmingham, AL 35233-3502              Kingsland, GA 31548-5826
3455 Peachtree Road, NE
Atlanta, GA 30326-4350


Camden County Tax Commissioner          Ceci Christy                           City of St. Mary's
PO Box 698                              Rountree Leitman Klein & Geer, LLC     418 Osborne Street
Woodbine, GA 31569-0698                 2987 Clairmont Rd, Ste 350             Saint Marys, GA 31558-8402
                                        Atlanta, GA 30329-4435


Daniel J. Strowe, Esq.  Roberts         Dentons US LLP                         Dougherty Architecture & Design, P.A.
 Tate LLC                               303 Peachtree St NE Ste 5300           4475 Legendary Drive, Ste. D
2487 Demere Road                        Atlanta, GA 30308-3265                 Destin, FL 32541-9306
Ste. 400
Saint Simons Island, GA 31522-5643


Ecological Solutions, Inc.              Georgia Department of Labor            Georgia Department of Revenue
630 Colonial Park Drive, Ste. 200       148 Andrew Young Inter. Blvd           Bankruptcy
Roswell, GA 30075-3761                  Room 738                               2595 Century Parkway NE, Suite 339
                                        Atlanta, GA 30303-1733                 Atlanta, GA 30345-3173


Georgia Dept. of Labor                  Georgia Dept. of Labor                 Internal Revenue Service
Suite 826                               Suite 910                              P. O. Box 7346
148 Andrew Young Inter. Blvd., NE       148 Andrew Young Inter. Blvd., NE      Philadelphia, PA 19101-7346
Atlanta GA 30303-1751                   Atlanta GA 30303-1751


Internal Revenue Service                JDI Cumberland Inlet, LLC              Jacoby Development Inc.
CIO                                     8200 Roberts Drive                     8200 Roberts Drive
P.O. Box 7346                           Ste. 475                               Ste. 475
Philadelphia, PA 19101-7346             Atlanta, GA 30350-4132                 Atlanta, GA 30350-4132


Joint Development Authority of Camden County   Lindsay P. S. Kolba            MATSCO, Inc.
531 N Lee Street                        Office of the U.S. Trustee             c/o Ron C. Bingham, II, Esq.
Kingsland, GA 31548-5826                Suite 362                              Suite 1750
                                        75 Ted Turner Drive, S.W.              3455 Peachtree Road NE
                                        Atlanta, GA 30303-3330                 Atlanta, Georgia 30326-4350


Marketing Eye, LLC                      Matsco, Inc.                           Matsco, Incorporated
3344 Peachtree Road, Ste. 800           1600 Kenview Drive, N.W.               PO Drawer 970
Atlanta, GA 30326-4807                  Marietta, GA 30060-1086                Marietta, GA 30061-0970


Matthew Burton                          Edwin G. Rice                          William A. Rountree
Matsco, Incorporated                    Bradley Arant Boult Cummings LLP       Rountree Leitman Klein & Geer, LLC
1600 Kenview Drive NW                   Suite 1000                             Century Plaza I, Suite 350
Marietta, GA 30060-1086                 1001 Water Street                      2987 Clairmont Road
                                        Tampa, FL 33602-5468                   Atlanta, GA 30329-4448
```

STEVEN SOULIOS
104 West 27th Street, 11th Floor
New York, NY 10001-0250

Safe and Green Development Corp.
fka SG Development Crop
990 Biscayne Blvd.
Miami, FL 33132-1557

Samuel Richards, Esq.
Matsco, Incorporated
PO Drawer 970
Marietta, GA 30061-0970

Secretary of the Treasury
15th & Pennsylvania Avenue, NW
Washington, DC 20200

Terracon
10841 S. Ridgeview Road
Olathe, KS 66061-6456

The Abram Law Group, LLC
1200 Ashwood Parkway
Ste. 560
Atlanta, GA 30338-6994

The Ligon Firm
158 Scranton Connector
Brunswick, GA 31525-0540

U. S. Securities and Exchange Commission
Office of Reorganization
Suite 900
950 East Paces Ferry Road, NE
Atlanta, GA 30326-1382

United States Attorney
Northern District of Georgia
75 Ted Turner Drive SW, Suite 600
Atlanta GA 30303-3309

United States Trustee
362 Richard Russell Federal Building
75 Ted Turner Drive, SW
Atlanta, GA 30303-3315

Doroteya Wozniak
Bradley Arant Boult Cummings LLP
1230 Peachtree Street NE
Ste 21st Floor
Atlanta, GA 30309-3574

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Camden County Joint Development Authority

(u)Matsco, Inc.

End of Label Matrix
Mailable recipients     40
Bypassed recipients      2
Total                   42