**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| In re: | |
| JDI CUMBERLAND INLET, LLC | CASE NO. 25-55072-SMS |
| Debtor. | CHAPTER 11 |

**CAMDEN COUNTY JOINT DEVELOPMENT AUTHORITY'S**
**PROPOSED CONCLUSIONS OF LAW**

COMES NOW, Camden County Joint Development Authority (the "**Development Authority**"), a secured creditor of JDI Cumberland Inlet, LLC (the "**Debtor**") and hereby files this Proposed Conclusions of Law ("**Proposed Findings of Fact and Conclusions of Law**") with respect to the hearing set for October 15, 2025 at 10:00 AM EDT (the "**Hearing**")[1] on (A) *Motion of Camden County Joint Development Authority to (I) Dismiss Case; or (II) Alternatively, Grant Relief from the Automatic Stay* (ECF 41) (the "**Motion**"); (B) confirmation of the *Plan of Reorganization Proposed by JDI Cumberland Inlet, LLC* (ECF 48); and (C) *Camden County Joint Development Authority's Objection to Plan Confirmation* (the "**Objection**") (ECF 58). In support of its Motion and Objection, the Development Authority respectfully proposes as follows:[2]

---

[1] For the avoidance of doubt, the Proposed Conclusions of Law have not been consented to or approved by Debtor's counsel.
[2] References to "CCJDA Ex." shall mean and refer to the corresponding exhibit attached to the Developmental Authority's Witness and Exhibit List filed for the Hearing at ECF No. 63.

4919-0161-3422.4

## CONCLUSIONS OF LAW

**I.**      **Jurisdiction and Venue.**

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of this Motion is a core proceeding pursuant to 28 U.S.C. § 157.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The Motion to Dismiss is a core proceeding pursuant to 28 U.S.C. § 157.

**II.**      **Motion to Dismiss**.

3. In its Motion to Dismiss, the Development Authority contends the Debtor's case was filed in bad faith. CCJDA Ex. 3. The Development Authority primarily relies the factors set forth in *In re Phoenix Piccadilly*, 849 F.2d 1393 (11th Cir. 1988), in support of its argument for dismissal.

4. The Bankruptcy Code provides a court "shall convert . . . or dismiss a case under [Chapter 11], whichever is in the best interests of creditors and the estate, for cause." 11 U.S.C. § 1112(b)(1). In this case, the Development Authority seeks dismissal.

5. A debtor's lack of good faith in filing a bankruptcy petition constitutes "cause" for dismissal. *See, e.g.*, *In re Albany Partners, Ltd*., 749 F.2d 670, 674 (11th Cir. 1984); *In re Phoenix Piccadilly, Ltd*., 849 F.2d 1393, 1394 (11th Cir. 1988); *In re State St. Houses, Inc*., 356 F. 3d 1345, 1347 (11th Cir. 2004); *In re Pegasus Wireless Corp*., 391 F. App'x 802, 803 (11th Cir. 2010) ("We have held cause for dismissal exists when a bankruptcy petition was not filed in good faith."); *In re Clinton Fields, Inc*., 168 B.R. 265, 268 (Bankr. M.D. Ga. 1994). Determining bad faith with respect to the filing of a petition for relief "is a question of fact and must be made on a case-by-case basis."

*In re Causey*, No. 06-61237-JB, 2006 Bankr. LEXIS 1137, at *9 (N.D. Ga. Aug. 31, 2006), *aff'd sub nom.*, No. 1:06 CV 1182 TWT, 2006 U.S. Dist. LEXIS 66552 (N.D. Ga. Aug. 31, 2006).

6. "There is no particular test for determining whether a debtor has filed a petition in bad faith." *In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393, 1394 (11th Cir. 1988). Courts may consider any factors which evidence "an intent to abuse the judicial process and the purposes of the reorganization provisions" or more particularly, "factors which evidence that the petition was filed 'to delay or frustrate the legitimate efforts of secured creditors to enforce their rights.'" *Id*. (quoting *In re Albany Partners, Ltd.*, 749 F.2d 670, 674 (11th Cir. 1984)).

7. The Eleventh Circuit has endorsed applying the factors set forth for a bad faith filing in In re Phoenix Piccadilly for single asset real estate cases. *In re State St. Houses, Inc.*, 356 F.3d 1345, 1347 (11th Cir. 2004).

8. The *Phoenix Piccadilly* factors for a bad faith filing are: (1) the debtor has only one asset, the property at issue; (2) the debtor has few unsecured creditors whose claims are relatively small compared to the claims of the secured creditors; (3) the debtor has few employees; (4) the property is subject to a foreclosure action as a result of arrearages on the debt; (5) the debtor's financial problems essentially are a dispute between the debtor and the secured creditors which can be resolved in the pending state court action; and (6) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights. 849 F.2d at 1394–95.

9. Bankruptcy courts refer to the Phoenix Piccadilly factors in determining whether "bad faith" is present, but they are "non-exhaustive and not to be rigidly applied . . . ." *In re State St. Houses,*

*Inc.*, 356 F.3d at 1347. Regardless, when all the *Phoenix Piccadilly* factors are present, there is cause to dismiss a chapter 11 case. *See, e.g.*, *Phoenix Piccadilly*, 849 F.2d at 1394–95; *In re State St. Houses, Inc.*, 356 F.3d at 1347; *In re Joyce, Don & Assocs. Inc.*, No. 6:07-BK-04878-ABB, 2008 WL 343265, at *2 (Bankr. M.D. Fla. Jan. 30, 2008).

10. "Particularly when there is no realistic possibility of an effective reorganization and it is evident that the debtor seeks merely to delay or frustrate the legitimate efforts of secured creditors to enforce their rights, dismissal of the petition for lack of good faith is appropriate." *In re Albany Partners, Ltd.*, 749 F.2d at 674.

11. Based on the record before it, the Court analyzes these factors in turn as follows.

**A.  The Debtor has Only One Asset.**

12. Debtor's schedules show that except for a modest amount of money in the Debtor's bank account ($11,784.84) and a modest utility security deposit ($1,145.00), the Debtor's only asset is the Real Property. *Schedule A/B*, at CCJDA Ex. 2. The Development Property is the only portion the Real Property that has any meaningful value and it is subject to Development Authority's Instruments and Assignments which secure the obligations under the Loan Documents.

**B.  The Debtor has few Unsecured Creditors whose Claims are Small in Relation to the Claims of Secured Creditors**

13. The Schedules reflect non-contingent, liquidated, and undisputed secured claims of the Development Authority and Matsco totaling $10,428,254.62. *Schedule D*, at CCJDA Ex. 2. The Development Authority has filed a proof of claim in this case in the amount of $10,134,270.03 as of

September 30, 2025. CCJDA Ex. 5. Matsco has filed a proof of claim in this case in the amount of $1,049,561.64. Claim No. 4.

14. The Debtor's Schedules also reflect that the Camden County Tax Commissioner and the City of St Mary's hold priority claims in the amount of $125,000 and $25,000 respectively, and general unsecured claims that are not contingent, unliquidated, or disputed in the total amount of $294,573.74. *Schedule E/F*, at CCJDA Ex. 2.[3] The Camden County Tax Commissioner filed a proof of claim in this case in the amount of $113,167.40. Claim No. 1.

15. Accordingly, undisputed general unsecured creditors hold only approximately 2.7% of the total undisputed claims in the Bankruptcy Case.

### C. No Employees, No Revenue, and No Business Operations

16. The Debtor has no employees and never has. *2004 Transcript*, 48:10-14, at CCJDA Ex. 3. Moreover, the Debtor generates no revenues and never has. *2004 Transcript*, 48:4-9, at CCJDA Ex. 3. Indeed, the Debtor has no business operations. It merely owns real estate. In short, the Debtor has no business to reorganize or rehabilitate under Chapter 11 of the Bankruptcy Code. Even if it did, it generates no income from which to pay creditors.

---

[3] The Schedules and the claims register also reflect a disputed unsecured claim of Safe and Green Development Corp. in the amount of $4,500,000.00. *Schedule E/F*, at CCJDA Ex. 2; Claim 5-1, 5-2, and 5-3. Importantly, shortly before the Bankruptcy Case was filed, Safe and Green Development Corp. owned a 10% equity interest in the Debtor; however, its equity interest (which it paid $3,000,000 for) was converted into debt in in the amount of $4,500,000. *2004 Transcript*, 33:16–39:21, at CCJDA Ex. 3. According to the Debtor, this disputed debt is intended to be dealt with after the Bankruptcy Case. *2004 Transcript*, 39:18–21, at CCJDA Ex. 3. This claim is undoubtedly subject to reclassification as equity.

5

**D. The Debtor's Property is Subject to Foreclosure as a Result of Arrearage on the Debt**

17. Debtor failed to timely pay the August 15, 2024 payment due on the Loan by over two months. Then, Debtor failed to make its February 15, 2025, payment on the Loan. The Development Authority was forced to cover this payment, by making the corresponding payment on the Series 2020 Bond due on March 1, 2025. Thereafter the Loan was accelerated, and non-judicial foreclosure sales were scheduled for May 6, 2025. The Bankruptcy Case was commenced the day before the scheduled foreclosure date.

**E. The Debtor's Financial Problem Involves a Dispute Between the Debtor and its Secured Creditors that can be Resolved Through Non-Judicial Foreclosure Sale under Georgia Law**

18. The Debtor's breached the Loan Documents by failing to make payment on the Loan when due. This breach can readily be resolved through state law remedies such as a nonjudicial foreclosure sale under Georgia law. Indeed, the Development Authority scheduled nonjudicial foreclosure sales under Georgia law which were to be conducted on May 6, 2025. However, the Debtor filed its Bankruptcy Case the day before on May 5, 2025, which stayed the foreclosure sales. Furthermore, there is nothing about the proposed plan that requires the relief provided for by Chapter 11 under the Bankruptcy Code. The Debtor has always been free to pay its creditors the full amount of their claims from an equity raise.

19. Moreover, the Plan is just a continuation of the automatic stay to provide the Debtor more time to pay its creditors, but if it does not pay its creditors, the Development Authority is left to pursue its claims outside of bankruptcy. It is a plan of delay with no consideration in return for the

delay. At the end of the delay, the Development Authority gets to do what it has the right to do (absent the automatic stay) which is pursue legal enforcement of its claim under state law.

### F. The Timing of the Filing Evidences an Intent to Delay and Frustrate the Legitimate Efforts of Secured Creditors

20. The Debtor, who has no employees, no business operations, and no income or source of revenue to pay creditors, filed its Bankruptcy Case on May 5, 2025, to stay the foreclosure sales scheduled the next day on May 6th. *§ 341 Transcript*, 19:6–11, at CCJDA Ex. 3; *2004 Transcript*, 17:17–23, at CCJDA Ex. 3. This is particularly troubling because since at least June 1, 2021, (when the Debtor executed the Loan Documents) it has known that it must obtain additional financing or sell portions of the Development Property to service the Loan. *2004 Transcript*, 48:15–21, at CCJDA Ex. 3.

21. During the 2004 Examination, the Debtor clearly acknowledged that Development Agreement contemplates that the Debtor will have to obtain financing or sell some of the Development Property to service the Loan. *2004 Transcript*, 48:15–21, at CCJDA Ex. 3.

### G. No Realistic Prospect of Reorganization

22. The Debtor does not have a realistic prospect of an effective reorganization (rehabilitation) under chapter 11 of the Bankruptcy Code. Simply put, the Debtor has no source of revenue to pay creditors and fund a plan of reorganization. Although a chapter 11 plan of reorganization may adjust the debtor creditor relationship to preserve a going concern, it cannot create an operating business or revenues where none existed before.

23. At the 2004 Examination, Mr. Jacoby, the ultimate owner of the Debtor, testified that his "plan" is to obtain a new equity investor whose investment would be used to pay off the Debtor's creditors. *2004 Transcript*, 73:24–76:3, at CCJDA Ex. 3.  This, however, is not a legitimate chapter 11 plan of reorganization but rather a plan of delay in hopes of finding an investor to bail out the existing equity security holder.

24. The Debtor has had approximately 7 months since its February 2025 payment default on the Loan to find an investor or otherwise refinance or sell the Development Property. It has had a year since its first payment default in September 2024 to accomplish these results, and it has known since the outset of the Loan in June of 2021 that it would need to obtain additional financing or sell portions of the Development Property to service the Loan.  Indeed, Debtor's principal, Mr. Jacoby has so testified. *2004 Transcript*, 48:15–19, at CCJDA Ex. 3.  Yet Debtor failed to do so.  *2004 Transcript*, 48:20–21, at DA Ex. 3.

25. As addressed above, the Loan is part of a larger pass-through financing via issuance of the Series 2020 Bond. The Development Authority is not a traditional for-profit lender, but rather a quasigovernmental entity charged with fostering economic opportunity and development for the local Camden County community. Given the pass-through nature of the financing, the Development Authority and Camden County are at significant prejudice arising from the delay caused by the filing of the Bankruptcy Case because they are being called on to fund payments on the Series 2020 Bond

8

while the Debtor's ultimate equity security delays in hopes of finding an investor to solve his problem.[4]

26. Further, the Debtor's Proposed Plan contemplates the Development Authority's claim to be paid in full upon receiving "Investment Proceeds" from an unknown and unidentified third party. To date, the Debtor has failed to inform the Court of any progress on such efforts or the likelihood that such a third party exists.

27. For these reasons, cause exists to dismiss this bankruptcy case, as the Debtor has filed the case on the eve of foreclosure, has no realistic plan of reorganizing its business affairs, and the dispute surrounding the Loan is the impetus for this bankruptcy filing, which could easily be resolved between the Development Authority and the Debtor outside of bankruptcy.

III. **Motion for Relief from Stay**.

28. The Development Authority's Motion seeks in the alternative, for this Court to either lift the automatic stay under 11 U.S.C. § 362 so it may continue to exercise its state law remedies, or dismissal of the bankruptcy case. CCJDA Ex. 3.

29. Section 362 of the Bankruptcy Code provides that "on a request of a party in interest and after notice and a hearing, the court shall grant relief from the stay . . . for cause . . . ." 11 U.S.C. § 362(d)(1).

---

[4] The delay is even more troubling given that Mr. Jacoby apparently has the means to fund payment on the Loan but has seemingly chosen not to do so. *2004 Transcript*, 46:14–22, 47:22–48-1, at CCJDA Ex. 3.

9

4919-0161-3422.4

30. In this case, the Development Authority contends cause exists to lift the stay because the Debtor has no viable path to reorganization and its Proposed Plan only continues the delay at the expense and risk to the Development Authority. CCJDA Ex. 3.

31. The Development Authority also argues this case is only being maintained for the benefit of equity in hopes that an investor presents itself and unfairly prejudices the Development Authority, who, along with Camden County, will continue to be obligated to service the Series 2020 Bond while the Debtor seeks bankruptcy relief.

32. "An automatic stay may be terminated for "cause" pursuant to section 362(d)(1) of the Bankruptcy Code if a petition was filed in bad faith." *In re Phoenix Piccadilly, Ltd*., 849 F.2d 1393, 1394 (11th Cir. 1988); *see also In re Danley*, 540 B.R. 468, 475 (Bankr. M.D. Ala. 2015). "[W]hat amounts to bad faith is the same" under for both dismissal for cause pursuant to Section 1112(b) and relief from the automatic stay for cause pursuant to Section 362(d)(1), *Phoenix Piccadilly*, Ltd, 849 F.2d at 1394.

33. "There is no particular test for determining whether a debtor has filed a petition in bad faith." *Phoenix Piccadilly, Ltd*., 849 F.2d at 1394 (11th Cir. 1988). Courts may consider any factors which evidence "an intent to abuse the judicial process and the purposes of the reorganization provisions" or more particularly, "factors which evidence that the petition was filed 'to delay or frustrate the legitimate efforts of secured creditors to enforce their rights.'" *Id*. (quoting *In re Albany Partners, Ltd*., 749 F.2d 670, 674 (11th Cir. 1984)).

34. The Eleventh Circuit has endorsed applying the factors set forth for a bad faith filing in *In re Phoenix Piccadilly* for single asset real estate cases. *In re State St. Houses, Inc.*, 356 F.3d 1345, 1347 (11th Cir. 2004).

35. The *Phoenix Piccadilly* factors for a bad faith filing are: (1) the debtor has only one asset, the property at issue; (2) the debtor has few unsecured creditors whose claims are relatively small compared to the claims of the secured creditors; (3) the debtor has few employees; (4) the property is subject to a foreclosure action as a result of arrearages on the debt; (5) the debtor's financial problems essentially are a dispute between the debtor and the secured creditors which can be resolved in the pending state court action; and (6) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights. 849 F.2d at 1394–95.

36. Bankruptcy courts refer to the Phoenix Piccadilly factors in determining whether "bad faith" is present, but they are "non-exhaustive and not to be rigidly applied . . . ." *In re State St. Houses, Inc.*, 356 F.3d at 1347. Regardless, when all the *Phoenix Piccadilly* factors are present, there is cause to dismiss a chapter 11 case. *See, e.g.*, *Phoenix Piccadilly*, 849 F.2d at 1394–95; *In re State St. Houses, Inc.*, 356 F.3d at 1347; *In re Joyce, Don & Assocs. Inc.*, No. 6:07-BK-04878-ABB, 2008 WL 343265, at *2 (Bankr. M.D. Fla. Jan. 30, 2008).

37. "Particularly when there is no realistic possibility of an effective reorganization and it is evident that the debtor seeks merely to delay or frustrate the legitimate efforts of secured creditors to enforce their rights, dismissal of the petition for lack of good faith is appropriate." *In re Albany Partners, Ltd.*, 749 F.2d at 674.

38. Based on the record before it, the Court analyzes these factors in turn as follows.

**A. The Debtor has Only One Asset.**

39. Debtor's schedules show that except for a modest amount of money in the Debtor's bank account ($11,784.84) and a modest utility security deposit ($1,145.00), the Debtor's only asset is the Real Property. *Schedule A/B*, at CCJDA Ex. 2. The Development Property is the only portion the Real Property that has any meaningful value and it is subject to Development Authority's Instruments and Assignments which secure the obligations under the Loan Documents.

**B. The Debtor has few Unsecured Creditors whose Claims are Small in Relation to the Claims of Secured Creditors**

40. The Schedules reflect non-contingent, liquidated, and undisputed secured claims of the Development Authority and Matsco totaling $10,428,254.62. *Schedule D*, at CCJDA Ex. 2. The Development Authority has filed a proof of claim in this case in the amount of $10,134,270.03 as of September 30, 2025. CCJDA Ex. 5. Matsco has filed a proof of claim in this case in the amount of $1,049,561.64. Claim No. 4.

41. The Debtor's Schedules also reflect that the Camden County Tax Commissioner and the City of St Mary's hold priority claims in the amount of $125,000 and $25,000 respectively, and general unsecured claims that are not contingent, unliquidated, or disputed in the total amount of

4919-0161-3422.4

$294,573.74. *Schedule E/F*, at CCJDA Ex. 2.[5] The Camden County Tax Commissioner filed a proof of claim in this case in the amount of $113,167.40. Claim No. 1.

42. Accordingly, undisputed general unsecured creditors hold only approximately 2.7% of the total undisputed claims in the Bankruptcy Case.

### C. No Employees, No Revenue, and No Business Operations

43. The Debtor has no employees and never has. *2004 Transcript*, 48:10-14, at CCJDA Ex. 3. Moreover, the Debtor generates no revenues and never has. *2004 Transcript*, 48:4-9, at CCJDA Ex. 3. Indeed, the Debtor has no business operations. It merely owns real estate. In short, the Debtor has no business to reorganize or rehabilitate under Chapter 11 of the Bankruptcy Code. Even if it did, it generates no income from which to pay creditors.

### D. The Debtor's Property is Subject to Foreclosure as a Result of Arrearage on the Debt

44. Debtor failed to timely pay the August 15, 2024 payment due on the Loan by over two months. Then, Debtor failed to make its February 15, 2025, payment on the Loan. The Development Authority was forced to cover this payment, by making the corresponding payment on the Series 2020 Bond due on March 1, 2025. Thereafter the Loan was accelerated, and non-judicial foreclosure sales were scheduled for May 6, 2025. The Bankruptcy Case was commenced the day before the scheduled foreclosure date.

---

[5] The Schedules and the claims register also reflect a disputed unsecured claim of Safe and Green Development Corp. in the amount of $4,500,000.00. *Schedule E/F*, at CCJDA Ex. 2; Claim 5-1, 5-2, and 5-3. Importantly, shortly before the Bankruptcy Case was filed, Safe and Green Development Corp. owned a 10% equity interest in the Debtor; however, its equity interest (which it paid $3,000,000 for) was converted into debt in in the amount of $4,500,000. *2004 Transcript*, 33:16–39:21, at CCJDA Ex. 3. According to the Debtor, this disputed debt is intended to be dealt with after the Bankruptcy Case. *2004 Transcript*, 39:18–21, at CCJDA Ex. 3. This claim is undoubtedly subject to reclassification as equity.

13

### E. The Debtor's Financial Problem Involves a Dispute Between the Debtor and its Secured Creditors that can be Resolved Through Non-Judicial Foreclosure Sale under Georgia Law

45. The Debtor's breached the Loan Documents by failing to make payment on the Loan when due. This breach can readily be resolved through state law remedies such as a nonjudicial foreclosure sale under Georgia law. Indeed, the Development Authority scheduled nonjudicial foreclosure sales under Georgia law which were to be conducted on May 6, 2025. However, the Debtor filed its Bankruptcy Case the day before on May 5, 2025, which stayed the foreclosure sales. Furthermore, there is nothing about the proposed plan that requires the relief provided for by Chapter 11 under the Bankruptcy Code. The Debtor has always been free to pay its creditors the full amount of their claims from an equity raise.

46. Moreover, the Plan is just a continuation of the automatic stay to provide the Debtor more time to pay its creditors, but if it does not pay its creditors, the Development Authority is left to pursue its claims outside of bankruptcy. It is a plan of delay with no consideration in return for the delay. At the end of the delay, the Development Authority gets to do what it has the right to do (absent the automatic stay) which is pursue legal enforcement of its claim under state law.

### F. The Timing of the Filing Evidences an Intent to Delay and Frustrate the Legitimate Efforts of Secured Creditors

47. The Debtor, who has no employees, no business operations, and no income or source of revenue to pay creditors, filed its Bankruptcy Case on May 5, 2025, to stay the foreclosure sales scheduled the next day on May 6th. *§ 341 Transcript*, 19:6–11, at CCJDA Ex. 3; *2004 Transcript*, 17:17–23, at CCJDA Ex. 3. This is particularly troubling because since at least June 1, 2021, (when

14

4919-0161-3422.4

the Debtor executed the Loan Documents) it has known that it must obtain additional financing or sell portions of the Development Property to service the Loan. *2004 Transcript*, 48:15–21, at CCJDA Ex. 3.

48. During the 2004 Examination, the Debtor clearly acknowledged that Development Agreement contemplates that the Debtor will have to obtain financing or sell some of the Development Property to service the Loan. *2004 Transcript*, 48:15–21, at CCJDA Ex. 3.

### G. No Realistic Prospect of Reorganization

49. The Debtor does not have a realistic prospect of an effective reorganization (rehabilitation) under chapter 11 of the Bankruptcy Code. Simply put, the Debtor has no source of revenue to pay creditors and fund a plan of reorganization. Although a chapter 11 plan of reorganization may adjust the debtor creditor relationship to preserve a going concern, it cannot create an operating business or revenues where none existed before.

50. At the 2004 Examination, Mr. Jacoby, the ultimate owner of the Debtor, testified that his "plan" is to obtain a new equity investor whose investment would be used to pay off the Debtor's creditors. *2004 Transcript*, 73:24–76:3, at CCJDA Ex. 3. This, however, is not a legitimate chapter 11 plan of reorganization but rather a plan of delay in hopes of finding an investor to bail out the existing equity security holder.

51. The Debtor has had approximately 7 months since its February 2025 payment default on the Loan to find an investor or otherwise refinance or sell the Development Property. It has had a year since its first payment default in September 2024 to accomplish these results, and it has known since the outset of the Loan in June of 2021 that it would need to obtain additional financing or sell

15

portions of the Development Property to service the Loan. Indeed, Debtor's principal, Mr. Jacoby has so testified. *2004 Transcript*, 48:15–19, at CCJDA Ex. 3. Yet Debtor failed to do so. *2004 Transcript*, 48:20–21, at DA Ex. 3.

52. As addressed above, the Loan is part of a larger pass-through financing via issuance of the Series 2020 Bond. The Development Authority is not a traditional for-profit lender, but rather a quasigovernmental entity charged with fostering economic opportunity and development for the local Camden County community. Given the pass-through nature of the financing, the Development Authority and Camden County are at significant prejudice arising from the delay caused by the filing of the Bankruptcy Case because they are being called on to fund payments on the Series 2020 Bond while the Debtor's ultimate equity security delays in hopes of finding an investor to solve his problem.[6]

53. Further, the Debtor's Proposed Plan contemplates the Development Authority's claim to be paid in full upon receiving "Investment Proceeds" from an unknown and unidentified third party. To date, the Debtor has failed to inform the Court of any progress on such efforts or the likelihood that such a third party exists.

54. In this case, the non-exhaustive list of factors described above support a determination that "cause" exists under 11 U.S.C. § 362 to grant the Development Authority's request for relief from the automatic stay.

## CONCLUSION

---

[6] The delay is even more troubling given that Mr. Jacoby apparently has the means to fund payment on the Loan but has seemingly chosen not to do so. *2004 Transcript*, 46:14–22, 47:22–48-1, at CCJDA Ex. 3.

16

For the reasons set forth above, the Court hereby finds cause to dismiss the Bankruptcy Case, or in the alternative, to lift the automatic stay over the Debtor and Debtor's property to allow the Development Authority to exercise any and all remedies against the Debtor and the Debtor's property under the respective loan documents, state and federal law.

**[END OF DOCUMENT]**

Respectfully submitted,

**BRADLEY ARANT BOULT CUMMINGS LLP**

*/s/ Doroteya N. Wozniak*
Bryan E. Bates
Ga. Bar No. 140856
Doroteya N. Wozniak
Georgia Bar No. 627491
1230 Peachtree St., NE, Suite 2100
Atlanta, GA 30309
T: (404) 868-2794
F: (404) 868-2100
E:   bebates@bradley.com
     dwozniak@bradley.com

-and-

*/s/ Edwin G. Rice*
Edwin G. Rice, Esq.
Florida Bar No. 855944 (***admitted pro hac vice***)
Thousand & One
1001 Water St., Suite 1000, Tampa, FL 33602
T: (813) 559-5500
F: (813) 229-5946
Primary email: erice@bradley.com
Secondary email: ajecevicus@bradley.com

***Attorneys for Camden County Joint Development Authority***

4919-0161-3422.4

**CERTIFICATE OF SERVICE**

I hereby certify that on the 13th day of October 2025, I electronically filed the foregoing document using the Bankruptcy Court's Electronic Case Filing program, which sends a notice of this document and an accompanying link to this document to all parties who have appeared in this case under the Bankruptcy Court's Electronic Case Filing program, including the following:

Lindsay P.S. Kolba
Office of the United States Trustee
lindsay.p.kolba@usdoj.gov

Ceci Christy
Rountree Leitman Klein & Geer, LLC
cchristy@rlkglaw.com

Will Rountree
Rountree Leitman Klein & Geer, LLC
wrountree@rlkglaw.com

Ron C. Bingham, II
Adams & Reese
ron.bingham@arlaw.com

**BRADLEY ARANT BOULT CUMMINGS LLP**

*/s/ Doroteya N. Wozniak*
Doroteya N. Wozniak
Georgia Bar No. 627491
Promenade Tower
1230 Peachtree St. NE, Suite 2100
Atlanta, GA 30309
P: (404) 868-2801
F: (404) 868-2010
E: dwozniak@bradley.com

4919-0161-3422.4