# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| In re: | ) |
| | ) **CHAPTER 11** |
| | ) **CASE 25-55072-SMS** |
| **JDI CUMBERLAND INLET, LLC,** | ) |
| | ) |
| **Debtor.** | ) |
| _____ | ) |

## AMENDED AND RESTATED PLAN OF REORGANIZATION
## PROPOSED BY JDI CUMBERLAND INLET, LLC

### October 22, 2025

### ROUNTREE LEITMAN KLEIN & GEER, LLC

Ceci Christy
Century Plaza I
2987 Clairmont Road, Suite 350
Atlanta, Georgia 30329
(404) 584-1238 Telephone
cchristy@rlkglaw.com
***Counsel for Debtor***

**NO MATERIALS OTHER THAN THE AMENDED DISCLOSURE STATEMENT
AND RELATED MATERIALS APPROVED BY THE BANKRUPTCY COURT
HAVE BEEN AUTHORIZED FOR USE IN SOLICITING ACCEPTANCES OR
REJECTIONS OF THIS AMENDED AND RESTATED PLAN.**

# ARTICLE I.   INTRODUCTION

JDI Cumberland Inlet, LLC, a Georgia limited liability company, Debtor and Debtor-in-Possession ("**Debtor**") in the above-captioned bankruptcy case, hereby proposes and files the following Amended and Restated Plan of Reorganization providing for a reorganization of its debts. This Plan of Reorganization (the "**Plan**") should be considered in conjunction with the related Amended Disclosure Statement.

# ARTICLE II.   DEFINITIONS AND RULES OF INTERPRETATION

**Section 2.01   Scope of Definitions and Rules of Interpretation**. For purposes of the Plan, all capitalized terms not otherwise defined herein or elsewhere in the body of the Plan shall have the meanings ascribed to them in this Article II of the Plan. Any term used in the Plan that is not defined in Article II or elsewhere in the Plan but is otherwise defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules. The rights and obligations arising under the Plan shall be interpreted, governed by, and construed and enforced in accordance with the laws of the State of Georgia (without regard to the conflict of law principles thereof), the Bankruptcy Code, and the Bankruptcy Rules, as appropriate.

**Section 2.02   Administrative Claim** shall mean an Allowed Claim for payment of an administrative expense of a kind specified in § 503(b) of the Bankruptcy Code and entitled to priority payment pursuant to § 507(a) of the Bankruptcy Code, including (a) the actual, necessary costs and expenses incurred after the Petition Date of preserving any of the Estate and operating Debtor's business, including wages, salaries, or commissions for services rendered after the Petition Date, (b) compensation for legal, financial advisory, accounting and other services and reimbursement of expenses approved, awarded or allowed under §§ 330(a) or 331 of the Bankruptcy Code, (c) the post-Effective Date costs and expenses of administering the Estate, (d) claims held by landlords related to the assumption of unexpired leases, and (e) all Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Bankruptcy Court.

**Section 2.03   Administrative Claims Bar Date** means the first Business Day that is at least 30 days after the Effective Date.

**Section 2.04   Allowed Claim** shall have the meaning set forth in Section 9.01 of this Plan.

**Section 2.05   Assets** shall mean all property of Debtor and the Estate as defined in § 541 of the Bankruptcy Code, including without limitation all right, title, and interest in and to any Avoidance Actions or other Causes of Action that Debtor or the Estate may have as of the Effective Date or any time thereafter.

**Section 2.06** *Avoidance Actions* shall mean any actions, causes of action, claims, demands, suits, or rights, created or arising in favor of Debtor or its Estate under the Bankruptcy Code, including all claims, rights and causes of action arising under § 510 or under any of §§ 542 through 553 of the Bankruptcy Code, in each case regardless of whether such actions, causes of action, claims, demands, suits or rights are commenced prior to or after the Effective Date.

**Section 2.07** *Ballot* shall mean each of the voting forms that will be distributed by Order of the Bankruptcy Court to Holders of Claims in Classes that are impaired and entitled to vote under the Plan.

**Section 2.08** *Bankruptcy Case* shall mean the Chapter 11 bankruptcy case of Debtor now pending before the Bankruptcy Court.

**Section 2.09** *Bankruptcy Code* shall mean the Bankruptcy Reform Act of 1978, as amended and codified in Title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as now in effect or hereafter amended and applicable to this Bankruptcy Case.

**Section 2.10** *Bankruptcy Court* shall mean the United States Bankruptcy Court for the Northern District of Georgia or, in the event such Bankruptcy Court ceases to exercise jurisdiction over the Bankruptcy Case, such court or adjunct thereof that exercises jurisdiction over the Bankruptcy Case in lieu of the United States Bankruptcy Court for the Northern District of Georgia.

**Section 2.11** *Bankruptcy Rules* shall mean: (a) the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, (b) the Federal Rules of Civil Procedure, and (c) the Local Rules of the Bankruptcy Court, all as amended from time to time and as applicable to this Bankruptcy Case or proceedings therein.

**Section 2.12** *Bar Date* shall mean the last date set by the Bankruptcy Court to file proofs of claim asserting a pre-petition claim.

**Section 2.13** *Business Day* shall mean any day, excluding Saturdays, Sundays, and legal holidays, on which commercial banks are open for business in Atlanta, Georgia.

**Section 2.14** *Buyer* shall mean Onic Corp.

**Section 2.15** *Cash* shall mean legal tender of the United States of America, or a check entitling the holder to immediate payment thereof.

**Section 2.16** *Causes of Action* shall mean any and all of Debtor's and the Estate's claims, causes of action, suits, proceedings, liabilities, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, torts, penalties, statutory violations, agreements, promises, variances, setoff or recoupment rights, trespasses, damages, or judgments,

3

whether asserted or unasserted, liquidated or unliquidated, based on any act or omission or other event occurring prior to the Effective Date, including Avoidance Actions and D&O Actions, and any claims acquired following the Petition Date, including without limitation any such Causes of Action described in the Disclosure Statement.

**Section 2.17** *Claim* shall mean a claim against Debtor or its Estate, as defined in § 101(5) of the Bankruptcy Code.

**Section 2.18** *Claiming Period* shall mean a period of the later of one year following the first Distribution to a Class of Claims or 180 days after a Distribution is made to a claimant on account of which Unclaimed Property first results.

**Section 2.19** *Claims Litigation* shall mean any and all litigation or proceedings arising out of objections to Claims asserted against the Estate, or affirmative counterclaims or requests for setoff or recoupment that are raised with regard to Claims asserted against the Estate.

**Section 2.20** *Claims Objection Deadline* shall mean the first Business Day that is at least thirty (30) days after the Effective Date.

**Section 2.21** *Class* shall mean any class into which Claims or Equity Interests are classified under this Plan.

**Section 2.22** *Confirmation Date* shall mean the date on which the Confirmation Order is entered on the docket of the Bankruptcy Court.

**Section 2.23** *Confirmation Hearing* shall mean the hearing on confirmation of the Plan, held pursuant to § 1128 of the Bankruptcy Code.

**Section 2.24** *Confirmation Order* shall mean the order entered on the docket by the Bankruptcy Court confirming the Plan pursuant to § 1129 of the Bankruptcy Code.

**Section 2.25** *Debtor* shall mean JDI Cumberland Inlet, LLC, a Georgia limited liability company.

**Section 2.26** *Deficiency Claim* shall mean the Allowed Claim of any secured creditor to the extent that such claim is not a Secured Claim, which shall be treated as a General Unsecured Claim.

**Section 2.27** *Disallowed Claim* shall have the meaning set forth in Section 9.02 of this Plan.

**Section 2.28** *Disbursing Agent* shall mean the Reorganized Debtor.

**Section 2.29** *Disputed Claim* shall have the meaning set forth in Section 9.03 of this Plan.

**Section 2.30** *Distribution* shall mean a distribution or payment under the Plan to the Holders of Allowed Claims.

**Section 2.31** *Effective Date* shall mean the earlier of: (i) consummation of a sale of Jacoby Development's membership interests in Debtor, (ii) consummation of a sale of Debtor's property, and (iii) January 5, 2026.

**Section 2.32** *Equity Interests* shall mean the membership interests in Debtor held by Jacoby Development.

**Section 2.33** *Estate* shall mean the bankruptcy estate created by the commencement of the Bankruptcy Case, both prior to and following the Confirmation Date.

**Section 2.34** *Final Order* shall mean an order or judgment, the operation or effect of which has not been stayed, reversed, modified, or amended and as to which order or judgment the time to appeal, petition for certiorari, or seek re-argument, review or rehearing has expired and as to which no notice of appeal, petition for certiorari, or motion for re-argument, review or rehearing was timely filed or, if timely filed, the order or judgment has been affirmed by the highest court to which the order or judgment was appealed or from which the re-argument or rehearing was sought, or certiorari has been denied, and the time to file any further appeal or to petition for certiorari or to seek further re-argument or rehearing has expired.

**Section 2.35** *General Unsecured Claim* shall mean an Allowed Claim that is not an Administrative Claim, a Priority Claim, a Secured Claim, a Priority Tax Claim, or is not otherwise separately classified.

**Section 2.36** *Holder* means the person or entity with legal standing to assert rights based on a Claim or Equity Interest, as applicable.

**Section 2.37** *Impaired* has the meaning ascribed to it in § 1124 of the Bankruptcy Code.

**Section 2.38** *Initial Distribution Date* shall mean the first business day which is at least 30 business days after the Effective Date.

**Section 2.39** *Insider* shall have the meaning set forth in § 101(31) of the Bankruptcy Code.

**Section 2.40** *Jacoby Development* shall mean Jacoby Development, Inc., a Georgia corporation, the 100% member of Debtor.

**Section 2.41** *JDA Loan Documents* shall mean the Loan Agreement, the JDA Note, the JDA Debtor Guaranty, JDA Security Deed #1, JDA Security Deed #2, and any other documents related to one or more of the foregoing documents.

**Section 2.42** *JDA Note* shall mean that certain Promissory Note dated June 1, 2021 from Debtor to JDA in the original principal amount of SEVEN MILLION TWENTY THOUSAND AND NO/100 U.S. DOLLARS

**Section 2.43** *JDA Debtor Guaranty* shall mean that certain guaranty dated June 1, 2021, executed by Debtor in favor of JDA.

**Section 2.44** *JDA Security Deed #1* shall mean that certain Fee and Leasehold Deed to Secure Debt and Security Agreement (First Priority) dated June 1, 2021, and recorded in Deed Book 2128, Page 796, Camden County, GA real estate records.

**Section 2.45** *JDA Security Deed #2* shall mean that certain Deed to Secure Debt and Security Agreement (Second Priority), dated June 1, 2021 and recorded in Deed Book 2128, Page 837, Camden County, GA real estate records.

**Section 2.46** *JDA Subordination* shall mean that certain Subordinate Lender's Consent and Subordination executed by JDA in favor of Matsco, Inc., a Delaware Holding Company, and recorded in Deed Book 2330, Page 166, Camden County, Georgia real estate records.

**Section 2.47** *Petition Date* shall mean May 5, 2025, the date on which Debtor filed its Chapter 11 petition, commencing this Bankruptcy Case.

**Section 2.48** *Plan* shall mean this Amended and Restated Plan of Reorganization, as it may be modified or amended from time to time pursuant to § 1127 of the Bankruptcy Code and with JDA's prior written permission.

**Section 2.49** *Priority Claim* shall mean an Allowed Claim entitled to priority pursuant to §§ 507(a)(2) through and including 507(a)(10) of the Bankruptcy Code, but not including Administrative Claims, Professional Claims, or Priority Tax Claims.

**Section 2.50** *Priority Tax Claim* shall mean an Allowed Claim entitled to priority pursuant to § 507(a)(8) of the Bankruptcy Code.

**Section 2.51** *Professional Claim* shall mean any Claim based on professional fees held by any party retained pursuant to §§ 327–330 of the Bankruptcy Code.

**Section 2.52** *Property* means approximately 1250 acres of undeveloped land in Camden County, Georgia that extends to the east coast of St. Marys, Georgia and includes approximately 560 acres

of land that can be developed and approximately 600 acres of undevelopable salt marsh along the North River in Camden County.

**Section 2.53** *Purchase Proceeds* means the funds paid by the Buyer for 100% of the membership interest held by Jacoby Development in Debtor, as its sole member, which funds Jacoby Development will contribute towards and are to be used to fund all payments and Distributions under this Plan.

**Section 2.54** *Record Date* means the date established in the Confirmation Order for determining the identity of Holders of Allowed Claims entitled to Distributions under this Plan. If no Record Date is established in the Confirmation Order, then the Record Date shall be the Confirmation Date. The Record Date shall not be later than the Confirmation Date.

**Section 2.55** *Record Holder* means the Holder of a Claim as of the Record Date.

**Section 2.56** *Scheduled* shall mean, with respect to any Claim or Equity Interest, the status and amount, if any, of such Claim or Equity Interest, as set forth in Debtor's Schedules, as amended.

**Section 2.57** *Secured Claim* shall mean an Allowed Claim secured by a lien on property of the Estate to the extent of the value, as of the Confirmation Date, of such lien as determined by a Final Order of the Bankruptcy Court pursuant to § 506 of the Bankruptcy Code, or as otherwise agreed in writing by Debtor and the Holder of such Allowed Claim.

**Section 2.58** *Unclaimed Property* means any funds payable to Holders of Claims which are unclaimed.

**Section 2.59** *Unimpaired* means, with respect to a Class of Claims or Equity Interests, any Class that is not Impaired.

**Section 2.60** *Unsecured Claim* means an Allowed Claim held by a Creditor of any of Debtor, which is not secured by an interest in any of the property of Debtor's Estate.

### ARTICLE III. CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

**Section 1.01   Introduction**.

(a) All Claims and Equity Interests in the Bankruptcy Case are classified in the Classes below. Notwithstanding any other provision of the Plan, a Claim in a particular Class is entitled to receive Distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class, and only to the extent such Claim has not been paid, released, or otherwise satisfied prior to the Effective Date.

(b) Under the provisions of § 1123(a)(1) of the Bankruptcy Code, Claims of a kind specified in §§ 507(a)(2), 507(a)(3), and 507(a)(8) of the Bankruptcy Code (administrative expenses, "gap" claims, and tax claims) may not be designated by Debtor as being in particular classes. Notwithstanding this prohibition of classification, these Claims are nevertheless treated in Article IV of this Plan.

**Section 3.02   Classification**. Claims and Equity Interests are classified as follows:

(a) **Class 1 – Camden County Joint Development Authority.** Class 1 consists of the Camden County Joint Development Authority, a joint development authority duly organized and validly existing under the constitution and laws of the State of Georgia **("JDA")** Allowed Secured Claim.

(b) **Class 2** – **Matsco, Inc. Secured Claim**. Class 2 consists of the Matsco, Inc., a Delaware holding company ("**Matsco**") Allowed Secured Claim.

(c) **Class 3** – **Safe and Green Development Corp.** Class 3 consists of the Safe and Green Development Corporation, a Delaware Corporation ("**S&G**") Allowed Unsecured Claim.

(d) **Class 4 - General Unsecured Claims**. Class 4 consists of all Allowed General Unsecured Claims held by creditors of Debtor.

(e) **Class 5 - Equity Interests**. Class 5 consists of all Equity Interests in Debtor.

## ARTICLE IV. TREATMENT AND IMPAIRMENT
## OF CLAIMS AND EQUITY INTERESTS

The treatment and impairment of each of the classes of Claims and Equity Interests set forth in Article III and the treatment and impairment of Administrative Claims and Priority Claims are described as follows:

**Section 4.01   Administrative Claims**. Unless paid in the ordinary course of business, pursuant to an order of the Bankruptcy Court, or separately classified, and except as may otherwise be agreed between Debtor and the Holder of an Administrative Claim, the Reorganized Debtor will pay all Administrative Claims that are Allowed Claims as of the Effective Date in Cash in full on the Effective Date or as soon thereafter as is reasonably practicable.  Subsequent to the Effective Date, the Reorganized Debtor will pay each Administrative Claim that becomes an Allowed Claim following the Effective Date in Cash in full as soon as reasonably practicable after the date the Claim becomes an Allowed Claim. Administrative Claims are Unimpaired and are presumed to accept the Plan.

**Section 4.02   Priority Tax Claims**.

(a) As to any Priority Tax Claim not paid in full on or before the Effective Date, the Holder of such Priority Tax Claim shall be paid in accordance with § 1129 of the Bankruptcy Code.

(b) Priority Tax Claims are Unimpaired and are presumed to accept the Plan.

**Section 4.03   Priority Claims**.

(a) Except as may otherwise be agreed between the Reorganized Debtor and the Holder of a Priority Claim, the Reorganized Debtor will pay all Priority Claims that are allowed as of the Effective Date in Cash in full on the Effective Date or as soon thereafter as is reasonably practicable.

(b) To the extent that any Priority Claim is allowed after the Effective Date, it will be paid in full in Cash within 30 days after the Claim is allowed or as soon thereafter as is reasonably practicable.

(c) Priority Claims are Unimpaired and are presumed to accept the Plan.

**Section 4.04   Classes.**

(a) **Class 1 – JDA Allowed Secured Claim**.

(i) Class 1 consists of the Claim held by JDA, as further described in Proof of Claim No. 6 filed on the claims register of the Bankruptcy Case which shall be deemed a valid, properly perfected, Allowed, and fully Secured Claim in the full amount stated in such Proof of Claim No. 6, together with all accrued and additionally accruing interest at the default rate, all fees, costs, expenses, and other charges of JDA (including, without limitation, reasonable attorneys' fees, and expenses of enforcement), and any other amounts due under the JDA Loan Documents, the Series 2020 Bond, or applicable law, *less $100* (the "**JDA Allowed Secured Claim**").

(ii) JDA holds (i) a first-priority lien and security interest in all of Debtor's Property described in JDA Security Deed #1, and JDA Security Deed #2 together with all other collateral pledged by Debtor or any other party in favor of JDA to secure, among other things, Debtor's obligations under the JDA Loan Documents, less and except the Subordinated Tract, ("**Senior Collateral**"), and (ii) a second-priority lien and security interest in that parcel of land which is described in that JDA Subordination and the MATSCO Security Instrument (the "**Subordinated Collateral**") (the Subordinated Collateral together with the Senior Collateral and all other collateral pledged in connection with the JDA Loan Documents, the "**Class 1 Collateral**").

(iii) On or before 5 p.m. EDT on October 22, 2025, Debtor shall make an adequate protection payment to JDA in immediately available funds in the amount of $170,007.41, time being of the essence with respect to this payment.

(iv) On or before January 5, 2026, Debtor shall pay in full the JDA Allowed Secured Claim.

(v) On or before October 24, 2025, Debtor shall, without condition or delay, execute and deliver to real estate counsel for the JDA, Stephen Kinney, who shall serve as escrow agent (the "**Escrow Agent**"), the following original documents, each duly executed, witnessed, and notarized, as applicable:

   a) Deeds in lieu of foreclosure (which shall not be deemed in full satisfaction of the underlying debt) in favor of the JDA (the "**DIL**") conveying to JDA or its designee all collateral including without limitation all property covered by Security Deed #1 and Security Deed #2 and other security instruments granted in favor of the JDA, in form and substance satisfactory to JDA in its sole discretion, and containing any such anti-merger and other protective provisions as JDA deems necessary or desirable; and

   b) All quit claim deeds, assignments, consents, or other documents requested by the JDA (the "**Related Documents**"), including from any affiliates, subsidiaries, or related entities of Debtor, as the JDA may require in its sole discretion to vest good and marketable title to all collateral subject to the security deeds executed in favor of JDA.

(vi) The DIL and Related Documents shall be delivered into escrow with the Escrow Agent upon their execution. The documents shall remain in escrow pending payment in full of the JDA Allowed Secured Claim or failure of the Escrow Release Condition. The Escrow Release Condition shall mean the failure of Debtor to pay in full to JDA, on or before January 5, 2026, the JDA Allowed Secured Claim, time is of the essence with respect to such payment. For purposes of this provision, "payment in full" or "pay in full" means actual receipt by JDA, in immediately available funds, of the entire JDA Allowed Secured Claim.

(vii) Upon the occurrence of the Escrow Release Condition, the Escrow Agent is irrevocably instructed and authorized hereby, without any further notice, consent, or action by Debtor, Reorganized Debtor, or any other party to release the DIL and Related Documents to JDA, whereupon JDA shall be immediately and unconditionally entitled to record the DIL and Related Documents and consummate the transfer of title to its collateral (including Class 1 Collateral), free and clear of all liens, claims, and interests (other than those expressly permitted by the JDA).[1] Debtor and Reorganized Debtor expressly,

---

[1] For the avoidance of doubt, the DIL shall be subject, among other expressly permitted by JDA liens, to that certain deed to secure debt dated October 17, 2024 by and between Debtor and MATSCO, INC., a Delaware holding company, and recorded in Deed Book 2330, Page 159 with the Clerk of Superior Court for Camden County, Georgia ("**MATSCO Security Instrument**"), but solely with respect to that portion of the property described in the MATSCO Security Instrument. For avoidance of doubt, the conveyance in the deed in lieu of foreclosure to JDA or its designee

irrevocably, and unconditionally waive any right to notice, redemption, stay, objection or other challenge to such release from escrow, recordation, and transfer of title pursuant to this provision.

(viii)  Notwithstanding anything else to the contrary contained in this Plan or otherwise, (i) JDA shall retain its liens on the Class 1 Collateral and the liens shall be valid and fully enforceable to the same validity, extent and priority as existed on the Petition Date until the JDA Allowed Secured Claim is paid in full and JDA has affirmatively confirmed such payoff; (ii) Debtor and Reorganized Debtor expressly waive any right to object, challenge, avoid, recharacterize, or otherwise dispute the validity, extent, priority, amount, enforceability, or secured status of the JDA Allowed Secured Claim, (iii) all parties that are obligated to JDA in connection with the JDA Loan Agreement and related Series 2020 Bond, including without limitation, Debtor, shall remain so obligated and shall not be deemed to be released from any obligations arising thereunder, and Debtor and Reorganized Debtor hereby reaffirm all of their obligations under the JDA Loan Documents; (iv) the Reorganized Debtor hereby expressly assumes, adopts, and agrees to be bound by, and shall remain liable for and perform, all obligations and liabilities of the Debtor under the JDA Loan Documents, related Series 2020 Bond, the Plan and any agreements, instruments, or documents executed in connection therewith, to the same extent and with the same force and effect as if the Reorganized Debtor were the Debtor itself; (v) confirmation of the Plan shall not effectuate to release, satisfy, discharge the JDA Allowed Secured Claim against any party, including, without limitation, Debtor, the Estate, or the Reorganized Debtor; (vi) Debtor has no Causes of Action and Avoidance Actions against JDA and hereby irrevocably waives, releases, and discharges any and all Causes of Action and Avoidance Actions that it may hold, assert, or could have asserted against JDA as of the Effective Date; (vii) JDA shall be entitled to exercise any and all rights and remedies available to it against Debtor, Reorganized Debtor, and the Estate, whether arising under applicable law, contract, or any order of the Bankruptcy Court, and nothing in the Plan, including any injunctions, shall impair, limit, or otherwise restrict JDA's ability to enforce such rights and remedies; and (viii) post-Petition Date interest at the default rate, together with all fees (including reasonable attorneys fees), and expenses accruing under the JDA Loan Documents and Series 2020 Bond, shall accrue and be added to, and shall constitute part of, the JDA Allowed Secured Claim.

(ix)  The JDA has the right to review, comment upon, and object to any proposed transaction, sale, refinancing, or other arrangement involving (i) Debtor or any of its affiliates, and (ii) any proposed purchaser, investor, lender, or other counterparty (the "**Transaction**"). Debtor acknowledges and agrees that nothing contained in the Plan, and no act, review, or consideration by JDA, shall obligate JDA to approve, consent to, or support any proposed Transaction.

Class 1 is Impaired and the JDA is entitled to vote to accept the Plan.

---

is not made subject to the MATSCO Security Instrument as to any property not encumbered by the MATSCO Security Instrument.

(b) **Class 2 – Matsco Allowed Secured Claim**. Class 2 shall consist of the Secured Claim of Matsco, Inc. (the "**Matsco Allowed Secured Claim**"). To secure its claim, Matsco holds a first priority lien and security interest in the Subordinated Collateral. Matsco's lien includes all of Debtor's right, title, and interest in and to the Subordinated Collateral (the "**Class 2 Collateral**"). Matsco shall retain its lien on the Class 2 Collateral and the lien shall be valid and fully enforceable to the same validity, extent and priority as existed on the Petition Date until the Class 2 Claim is paid in full.

The Matsco Allowed Secured Claim consists of all amounts owed under the Matsco loan documents as reflected in the Proof of Claim filed by Matsco, together with (i) all accrued and accruing interest as permissible under the Matsco loan, (ii) all fees, costs, and expenses of Matsco (including, without limitation, reasonable attorneys' fees, and expenses of enforcement), and (iii) any other amounts due under the loan documents.

Debtor waives any right to object to, challenge, or otherwise dispute the validity, amount, priority, or secured status of the Matsco Allowed Secured Claim.

On or before the Effective Date, Debtor shall pay in full the Matsco Allowed Secured Claim from the Purchase Proceeds.

If Class 2 is not paid in full on the Effective Date, Matsco shall have relief from the automatic stay under § 362 of the Bankruptcy Code to pursue its rights and remedies against Debtor and the Class 2 Collateral.

Matsco has the right to review, comment upon, and object to any proposed transaction, sale, refinancing, or other arrangement involving (i) Debtor or any of its affiliates, and (ii) any proposed purchaser, investor, lender, or other counterparty (the "**Transaction**"). Debtor acknowledges and agrees that nothing contained in the Plan, and no act, review, or consideration by Matsco, shall obligate Matsco to approve, consent to, or support any proposed Transaction.

Class 2 is Unimpaired and not entitled to vote on the Plan.

**(c)** **Class 3 – S&G Allowed Unsecured Claim**. Class 3 shall consist of the Unsecured Claim of S&G (the "**S&G Allowed Unsecured Claim**"). S&G filed a proof of claim designating its claim as secured and then amended that proof of claim to designate its claim as unsecured in the amount of $4,500,000.  Debtor disputes the amount of the S&G Class 3 Claim.

S&G is a former member of Debtor.  On or about February 11, 2025, Jacoby Development and S&G entered into a Forced Sale Agreement pursuant to which Jacoby Development exercised its right to buyout S&G's member interest in Debtor under Debtor's Operating Agreement dated June 24, 2021. Jacoby Development repurchased S&G's member interest for $4,500,000.  Debtor issued a 360 day Promissory Note in favor of S&G in the amount of $4,500,000 with interest at the rate of 6.5%. (the "**S&G Note**"). The S&G Note provides that Debtor has the option to extend the term of the Note for and additional 360 days each

time up to 3 times (the "**Extension Option**") with payment of a $45,000 fee (the "**Extension Fee**").  Debtor must exercise each option by providing written notice to S&G at least 30 days prior to the end of the first 360-day term.

In the event Debtor and S&G cannot settle the amount of the S&G Allowed Unsecured Claim on or before the Effective Date, Debtor shall exercise the Extension Option and pay S&G the Extension Fee on the Effective Date.

In the event Debtor and S&G settle the amount of the S&G Allowed Unsecured Claim on or before the Effective Date, S&G shall be paid in full on the Effective Date from the Purchase Proceeds.

If Class 3 is not paid in full on the Effective Date, S&G shall have relief from the automatic stay under § 362 of the Bankruptcy Code to pursue its rights and remedies against Debtor and the Property.

Class 3 is Impaired and is entitled to vote on the Plan.

(c) **Class 4 - General Unsecured Claims**.  Class 4 shall consist of all Allowed General Unsecured Claims. Debtor shall pay the Class 4 Claims in full on the Effective Date. Any Class 4 Claim shall be reduced by any payment received by the creditor holding such claim from any third party or other obligor and Debtor's obligations hereunder shall be reduced accordingly.

Class 4 shall be paid from the Purchase Proceeds.

Class 4 is Impaired and entitled to vote on the Plan.

Nothing herein shall constitute an admission as to the nature, validity, or amount of any such claims. Debtor reserves the right to object to any and all claims.

(d) **Class 5 – Equity Interests**. Jacoby Development is the Holder of 100% of the  Equity Interest in Debtor. Class 5 will not retain any equity interests in Reorganized Debtor as of the Effective Date of the Plan.

Class 5 is not entitled to vote on the Plan.

### ARTICLE V.  MEANS FOR IMPLEMENTATION AND EXECUTION OF THE PLAN

**Section 5.1 The Stock Purchase Agreement.** Jacoby Development, Debtor's sole member, and the Buyer have executed a binding Letter of Intent (the "**LOI**") dated October 22, 2025 that provides for the sale of Jacoby Development's  Equity Interests in Debtor to the Buyer. The Buyer shall pay in full the amounts owed in Class 1, Class 2, Class 3 (if Allowed), and Class 4 in full on the Effective Date as described in Article IV. Jacoby Development will receive a one time payment for the sale of its Equity Interest in the amount of $20,000,000 in one lump sum on the Effective

Date. A fully executed binding LOI is attached hereto and incorporated herein by reference as Exhibit A.

On or before the Confirmation Hearing, Debtor and the Buyer shall have executed the Membership Interest Purchase Agreement (the "**MIPA**").

The LOI requires the Buyer to pay the following payments to satisfy in full the Allowed Claims of Class 1, Class 2, Class 3 (if Allowed), Class 4, Camden County Tax Commissioner, and the City of St. Mary's on the Effective Date.

    i.   $10,134,270.03 to the JDA or such amount as is required to pay the JDA Allowed Secured Claim in full;

    ii.   $1,049,561.64 to Matsco or such amount as is required to pay the Matsco Allowed Secured Claim in full;

    iii.   Consideration necessary to satisfy the negotiated S&G Allowed Unsecured Claim in full;

    iv.   $113,167.40 to the Camden County Tax Commissioner;

    v.   $25,000.00 to the City of St. Marys;

    vi.   Other identified secured or priority claims and liens disclosed and approved by the Buyer; and

    vii.   Any other claims to be paid in full in cash under the Plan

**Section 5.2    Reorganized Debtor.** On the Effective Date, the Reorganized Debtor shall issue new Equity Interests to Buyer free and clear of all Liens, Claims, interests, and encumbrances in exchange for the consideration specified in the LOI and the MIPA.

**Section 5.3.  Parties Responsible for Implementation of the Plan**. After the Effective Date, the Reorganized Debtor will be responsible for implementing the Plan. The Reorganized Debtor will be authorized and empowered to take such actions as are required to effectuate the Plan, including the prosecution and enforcement of Causes of Action. Reorganized Debtor will also file the necessary final reports and will apply for a final decree as soon as practical after substantial consummation and the completion of the claims analysis and objection process.

**Section 5.4    Identity of Principals of Reorganized Debtor**. As of the Effective Date, Onic Corp. will be the sole member of Reorganized Debtor. On the Effective Date, the Reorganized Debtor shall issue new Equity Interests to the Buyer free and clear of all Liens, Claims, interests, and encumbrances in exchange for the consideration specified in the LOI.

Except as otherwise provided in the Plan, Reorganized Debtor will exist after the Effective Date as a reorganized, separate corporate entity with all the powers of a corporation under Georgia law where Debtor and Reorganized Debtor are incorporated and pursuant to its certificate of incorporation and operating agreement or other organizational documents in effect before the Effective Date, as such documents are amended by or pursuant to the Plan.

**Section 5.5     Certificate of Incorporation and Operating Agreement**

As of the Effective Date, and without any further action by the members or directors of Reorganized Debtor, and to the extent necessary to comply with § 1123(a)(6) of the Bankruptcy Code, Reorganized Debtor's articles of incorporation and operating agreement shall be amended and restated, in form and substance consistent with the Plan, to provide for, among other things, the authorization of all acts necessary to implement the Plan, including the issuance of the new Reorganized Debtor's Equity Interests. The members of Reorganized Debtor are authorized to file such articles of incorporation and operating agreement with the appropriate authority(ies) without member approval or any other action. After the Effective Date, Reorganized Debtor may amend and/or restate its articles of incorporation and operating agreement as permitted under applicable law.

**Section 5.6     Reorganized Debtor's Members; Termination of Existing Officers**

The officers and members of Debtor existing immediately before the Effective Date shall be deemed terminated and/or removed without cause effective on the Effective Date. Any claim or cause of action arising from the termination or removal of any officer or member shall be deemed waived in consideration for the release and exculpation granted under the Plan.

On the Effective Date, the initial composition of Reorganized Debtor shall consist of one member that shall be the managing member:  Onic Corp.

**Section 5.7     Transactions at Closing.**

(a) **Closing of the Stock Purchase Agreement:** The following shall occur on the Effective Date contemporaneously with the closing of the Stock Purchase Agreement:

(i)     Jacoby Development shall execute a Bill of Sale and Transfer Agreement selling and transferring its 100% Equity Interests in Debtor to Buyer. Reorganized Debtor shall cancel Jacoby Development's transferred stock and shall issue to Buyer new stock in Reorganized Debtor;

(ii)    Jacoby Development shall deliver to Buyer all licenses and permits for the Property;

(iii)   Buyer shall pay directly to the JDA, Matsco, S&G (if Allowed), and the General Unsecured Creditors the amounts to satisfy their Allowed Claims in full as described in Section 5.1 above. Jacoby Development, Buyer, Debtor, Reorganized Debtor and any other necessary party, as applicable, shall deliver all documents and perform all actions reasonably contemplated regarding the implementation of the Plan, the LOI, and the MIPA.

(b)  **Execution of Documents and Corporate Action**

Jacoby Development is authorized (i) to execute on behalf of Debtor, in a representative capacity and not individually, any documents or instruments after the Confirmation Date or on the Effective Date that may be necessary to consummate the Plan and (ii) to undertake any other action on behalf of Debtor to consummate the Plan. Each of the matters provided for under the Plan involving the corporate structure of Debtor or corporate action to be taken by or required of Debtor will, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and shall be authorized, approved, and, to the extent taken before the Effective Date, ratified in all respects without any requirement of further action by any member, creditor, or officer of Debtor.

(c)  **Amendment of Reorganized Debtor's Governance Documents**

Reorganized Debtor's articles of organization and operating agreement shall, to the extent required under § 1123(a)(6) of the Bankruptcy Code, be amended consistent with the Plan and all necessary action shall be taken to provide for provisions, terms, and conditions necessary to comply, conform with and implement the terms, conditions, and requirements of the Plan.

**Section 5.8     Funding of Plan**. The Distributions contemplated by this Plan shall be funded from the Purchase Proceeds that Jacoby Development has agreed to contribute in recognition and acknowledgment that Jacoby Development will receive a substantial and direct benefit from the terms of this Plan, including, the satisfaction of the contemplated claims.

**Section 5.9     Disbursing Agent**. The Reorganized Debtor is authorized to make Distributions pursuant to this Plan and maintain bank accounts in the ordinary course of business or to designate any person or entity to do so on its behalf. The Reorganized Debtor may also pay the ordinary and necessary expenses of administration related to implementation of the Plan in due course.

**Section 5.10    Retained Actions**. On the Effective Date, pursuant to § 1123(b) of the Bankruptcy Code, except as otherwise provided in the Plan, all Causes of Action (including Avoidance Actions) that Debtor or the Estate had or had power to assert immediately prior to the Confirmation Date, shall become property of the Reorganized Debtor.

**Section 5.11    Settlement of Claims**. The Reorganized Debtor shall be authorized to resolve objections to Claims and enter into settlements and stipulations regarding the amount of Allowed Claims without notice or further order of the Bankruptcy Court.

**Section 5.12    Exclusive Right to Modify Plan**. Debtor shall retain the exclusive right to amend or modify the Plan, and to solicit acceptances of any amendments to, or modifications of, the Plan until and including the Confirmation Date; *provided, however*, any amendment, modification, or alteration to any provision of the Plan must be previously approved by the JDA and Matsco.

**Section 5.13   Effectuating Documents; Further Transactions**. Debtor and Reorganized Debtor shall be authorized to execute, deliver, file, and/or record such contracts, instruments, releases, indentures, and other agreements or documents, and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

**Section 5.14   Further Authorization**. Debtor and the Reorganized Debtor shall be entitled to seek such orders, judgments, injunctions, and rulings as it deems necessary or desirable to carry out the intentions and purposes and to give full effect to the provisions of this Plan.

**Section 5.15   Retention and Payment of Professionals by the Reorganized Debtor**. Upon the Effective Date, any requirement that professionals comply with §§ 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtor may employ and pay professionals in the ordinary course of business for purposes of implementing the Plan or for such other purposes it sees fit in its sole discretion.  Compensation and reimbursement of expenses earned and incurred by professionals performing services for the Reorganized Debtor, as well as Professional Claims arising after confirmation, shall be paid by the Reorganized Debtor monthly after rendition of bills to the Reorganized Debtor, and no further applications for compensation, reimbursements of expenses, or payment of administrative expenses shall be necessary or required unless a dispute arises in regard thereto; in the event of any such dispute, the same shall be resolved by the Bankruptcy Court after notice and hearing.

**Section 5.16   U.S. Trustee Fees and Reporting**. Debtor and the Reorganized Debtor, as appropriate, shall cause to be paid any and all fees of the Office of the United States Trustee as and when such fees become due, until this Bankruptcy Case is closed and a final decree is entered. In addition, the Reorganized Debtor will file all post-confirmation reports required by the United States Trustee's Office. Any outstanding fees owed to the U.S. Trustee as of the Effective Date shall be paid in full on the Effective Date.

## ARTICLE VI.  ACCEPTANCE OR REJECTION OF THE PLAN

**Section 6.01   Classes Entitled to Vote**. Each Impaired Class of Claims shall be entitled to vote to accept or reject the Plan. Each Unimpaired Class of Claims shall be deemed to have accepted the Plan and shall not be entitled to vote to accept or reject the Plan.

**Section 6.02   Claim Designations**. The Plan Proponent reserves the right to seek to designate, pursuant to § 1126(e) of the Bankruptcy Code, any vote cast by a Holder of a Claim whose vote on the Plan was submitted for an improper purpose or not in good faith.

## ARTICLE VII.  PROVISIONS REGARDING DISTRIBUTIONS

**Section 7.01    Date of Distributions to Creditors**. Payments to Holders of Allowed Claims shall be paid as provided in Article IV of this Plan.

**Section 7.02    Distributions Only on Allowed Claims**. A Claim is in a particular Class and entitled to receive Distributions only to the extent it is an Allowed Claim, and only if and when such Claim becomes an Allowed Claim. A Claim that is ultimately a Disallowed Claim, or otherwise not entitled to any Distribution by settlement, compromise, untimely filing, or other order of the Bankruptcy Court shall not participate in the Distributions to be made under the Plan

**Section 7.03    Distributions to Holders as of the Record Date**. All Distributions on account of Allowed Claims shall be made to the Record Holders of such Claims. As of the close of business on the Record Date, the claims register maintained by the Bankruptcy Court shall be closed, and there shall be no further change in the Record Holder of any Claim. The Disbursing Agent shall have no obligation to recognize any transfer of any Claim occurring after the Record Date. The Disbursing Agent shall instead be entitled to recognize and deal for all purposes under this Plan with the Record Holders as of the Record Date.

**Section 7.04    Delivery of Distributions**. Unless otherwise provided in the Plan, all Distributions to a Holder of an Allowed Claim shall be made by the Disbursing Agent (a) to the address set forth on the proof of claim filed by such Holder, (b) to the address set forth in any written notices of address change delivered to Debtor's undersigned counsel after the date of filing of any related proof of claim, (c) to the address reflected in the Schedules if no proof of claim has been filed and Debtor has not received a written notice of change of address, or (d) if the Holder's address is not listed in the Schedules and no proof of claim has been filed, at the last known address of such Holder according to Debtor's books and records.

**Section 7.05    Creditors' Duty to Provide Address Updates**.  It shall be the responsibility of each Holder to maintain a current address with the Disbursing Agent by informing Reorganized Debtor's undersigned counsel in writing of any address change. Providing such updated address information following any change of address shall be a condition precedent to receiving any Distributions under this Plan.

**Section 7.06    Interest on Claims**. Except as provided in a Final Order entered in the Bankruptcy Case, (a) no Holder of any Claim, other than the Holders of Priority Tax Claims and Allowed Secured Claims, shall be entitled to interest accruing on or after the Petition Date on such Claim, and (b) interest shall not accrue or be paid upon any Disputed Claim with respect to the period from the Petition Date to the date a Distribution is made thereon if and after such Disputed Claim, or any part thereof, becomes an Allowed Claim.

**Section 7.07    Method of Payment**. All payments made pursuant to this Plan shall be in Cash or by any means reasonably selected by the Reorganized Debtor, including check, ACH, or wire transfer.

**Section 7.08    Prepayment**. Unless the Plan or the Confirmation Order provides otherwise, the Reorganized Debtor shall have the authority to prepay, without penalty, all or any portion of an Allowed Claim at any time.

**Section 7.09    Setoffs**. Debtor may, but shall not be required to, set off against any Claim, and the payments or other Distributions to be made pursuant to the Plan on account of such Claim, claims of any nature whatsoever that Debtor, the Estate, or the Reorganized Debtor may have against such Holder of a Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by Debtor, the Estate, or the Reorganized Debtor of any such claim that Debtor may have against such Holder of a Claim.

**Section 7.10    Unclaimed Property**.

(a) Unclaimed Property shall include (a) checks (and the funds represented thereby) which have been returned as undeliverable without a proper forwarding address, (b) funds for checks which have not been presented and paid within 90 days of their issuance, (c) checks (and the funds represented thereby) which were not mailed or delivered because of the absence of a proper address to mail or deliver such property and (d) checks (and the funds represented thereby) which are not mailed due to the lack of required tax identification information, but only following two mailed requests for this tax identification information.

(b) During the Claiming Period, Unclaimed Property shall be held solely for the benefit of the Holders of Allowed Claims which have failed to claim such property. During the Claiming Period, Unclaimed Property due the Holder of an Allowed Claim shall be released and delivered to such Holder upon presentation of proper proof by such Holder of its entitlement thereto.

(c) In the event that there is Unclaimed Property with regard to any Claim, Debtor shall, until such Unclaimed Property is claimed or the Claiming Period with regard to the Holder of such Claim has expired, retain all subsequent Distributions due with regard to such Claim.

(d) After the Claiming Period with regard to such Holder has expired, no subsequent Distributions shall be made on account of such Claim, and such Claim shall be treated as being disallowed, waived, and satisfied; provided, however, that the Claiming Period may be extended for the Holder of any Allowed Claim by agreement between the Claim Holder and Debtor. At the end of the Claiming Period, the Holder of an Allowed Claim theretofore entitled to Unclaimed Property shall cease to be entitled thereto and the Unclaimed

Property shall become the property of the Reorganized Debtor pursuant to § 347(b) of the Bankruptcy Code.

(e)  All parties entitled to participate in Distributions under this Plan shall be required to notify the Reorganized Debtor in writing of any change in the address to which Distributions are to be sent.

(f)  These provisions shall apply without regard to any applicable non-bankruptcy laws with respect to unclaimed property.

**Section 7.11   Rounding**. Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment made by the Reorganized Debtor may reflect a rounding of such fraction down to the nearest whole cent.

**Section 7.12   De Minimis Payments**. The Reorganized Debtor will not issue payments under this Plan on account of any Claim for which the Distribution would equal $20.00 or less.

## ARTICLE VIII. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**Section 8.01   Assumption**. Any executory contracts and unexpired leases that have not been previously assumed or rejected, and that are not expressly rejected pursuant to a specific provision of this Plan, shall be deemed assumed by Debtor and assigned to Buyer on the Effective Date.

**Section 8.02   Cure of Defaults**. All cure payments which are required by § 365(b)(1) of the Bankruptcy Code shall be made on the Effective Date. In the event of a dispute regarding the amount of any cure payment, the ability of the Reorganized Debtor to provide adequate assurance of future performance or any other matter pertaining to assumption or assignment, the Reorganized Debtor shall make such cure payments required by § 365(b)(1) of the Bankruptcy Code following the entry of a Final Order resolving such dispute.

**Section 8.03   Claims for Damages**. Each person who is a party to an executory contract or unexpired lease rejected by Debtor during the pendency of this Bankruptcy Case but prior to confirmation of this Plan must file its claim for damages, including requests for payment of Administrative Claims, by the applicable deadline(s) as previously established or to be established by the Bankruptcy Court, as appropriate.

**Section 8.04   Classification of Claims**. Allowed Claims arising out of the rejection of executory contracts and unexpired leases shall be Class 3 General Unsecured Claims.

**Section 8.05   JDA Contract.** Debtor rejects the Development Agreement by and between the JDA and Debtor as of the Effective Date. The JDA (without waiving any defaults or claims under

the JDA Loan Agreement, other JDA Loan Documents, and the Series 2020 Bond) waives any rejection damages arising from the rejection of the Development Agreement.

## ARTICLE IX.  ALLOWANCE OF CLAIMS

**Section 9.01   Allowed Claims**. An "Allowed" Claim for purposes of the Plan means any one of the following:

(a)  If no objection is filed by Debtor or Reorganized Debtor to a proof of claim on or before the Claims Objection Deadline (as extended, if applicable), such Claim shall be deemed an Allowed Claim, of the type and in the amount set forth in such request or proof of claim;

(b)  If Debtor or Reorganized Debtor files an objection to such request or proof of claim, then such Claim shall be an Allowed Claim of the type and to the extent provided in (i) a subsequent Final Order of the Bankruptcy Court or (ii) a stipulation agreed upon by Debtor, and shall thereafter be treated in accordance with the provisions of such order or stipulation and the Plan; or

(c)  Such Claim is expressly Allowed, in whole or in part, pursuant to any provision of this Plan or any order of the Bankruptcy Court approving this Plan.

**Section 9.02   Disallowed Claims**.  A Disallowed Claim is a Claim or any portion thereof that: (i) is not an Allowed Claim or a Disputed Claim, (ii) has been disallowed by a Final Order of the Bankruptcy Court; (iii) is listed in any of Debtor's Schedules at $0.00, unknown, contingent, disputed, or unliquidated and as to which no proof of claim has been timely filed or deemed timely filed with the Bankruptcy Court; or (iv) is not listed in Debtor's Schedules and as to which a proof of claim bar date has been established but no proof of claim timely filed or deemed timely filed with the Bankruptcy Court.

**Section 9.03   Disputed Claims**. A Disputed Claim is a Claim or any portion thereof that is not an Allowed Claim or a Disallowed Claim, and which is the subject of an objection timely filed with the Bankruptcy Court and which objection has not been withdrawn, settled, or overruled by a Final Order of the Bankruptcy Court.

**Section 9.04   Scheduled Claims**. With respect to any claims against Debtor that are listed in Debtor's Schedules, and the Holder of such Claim has not filed a proof of claim, the following shall apply:

(a)  If such claim is not shown in Debtor's Schedules as disputed, unliquidated, or contingent, and if Debtor has not filed an objection to said claim, then such claim shall be deemed an Allowed Claim, of the type and in the amount shown on such Schedules;

(b) If such claim is shown in Debtor's Schedules as disputed, contingent, and/or unliquidated, then such claim shall be a Disallowed Claim and disallowed in its entirety; or

(c) If such claim is not shown in Debtor's Schedules as disputed, unliquidated, or contingent, but Debtor has timely filed an objection to such claim, the claim shall be a Disputed Claim until such time that it becomes an Allowed Claim and/or a Disallowed Claim.

**Section 9.05   Claims Objection Deadline**. All objections to Claims must be filed no later than the Claims Objection Deadline, subject to any extension granted by further order of the Bankruptcy Court.

**Section 9.06   Claims Allowed After the Effective Date**. To the extent that any Claim becomes an Allowed Claim after the Effective Date, its Holder will be paid its Distribution in Cash within 30 days after the Claim is allowed or as soon thereafter as is reasonably practicable.

**Section 9.07   Resolution of Claims Objections**. On and after the Effective Date, Debtor shall have the authority to compromise, settle, or withdraw any objections to Claims, or otherwise resolve any Disputed Claims, without further approval of the Bankruptcy Court.

**Section 9.08   Adjustment of Claims and Treatment**. Debtor and the Reorganized Debtor shall be authorized, empowered, and permitted subsequent to the Confirmation Date to enter into an agreement or agreements with any creditor providing for payment or treatment of such creditor's Claim upon terms other than those provided in this Plan without further order of the Bankruptcy Court; provided, however, that no such agreement or agreements shall provide for payment or treatment of such creditor's Claim upon terms more favorable to such creditor than the payment or treatment provided for such creditor in this Plan.

**Section 9.09   Administrative Claims Bar Date**. To the extent that any party asserts an Administrative Claim that has not been paid in full by the Effective Date, such party shall file a motion for allowance and payment of such Claim no later than the Administrative Claims Bar Date. Failure of any party to file such a motion prior to the Administrative Claims Bar Date shall entitle Debtor to presume that no such Claim exists and will result in any such Claim being discharged, unless the Bankruptcy Court orders otherwise after notice and a hearing. The Administrative Claims Bar Date shall not apply to Professional Claims.

**Section 9.10   Professional Claims Bar Date**. Any Person seeking an award by the Bankruptcy Court of professional compensation for Professional Claims incurred prior to the Effective Date shall file a final application with the Bankruptcy Court for allowance of professional compensation for services rendered and reimbursement of expenses incurred through the Effective Date within 60 days after the Effective Date or by such other deadline as may be fixed by the Bankruptcy Court.

**Section 9.11   No Interest on Claims**. Unless otherwise specifically provided for in this Plan, the Confirmation Order, or a post-petition agreement in writing between Debtor and a Holder, post-petition interest shall not accrue or be paid on any Claims, including any Disputed Claim that later

becomes an Allowed Claim, and no Holder shall be entitled to any interest accruing on or after the Petition Date with respect to any Claim except as specifically provided in this Plan.

**Section 9.12   No Admissions; Objection to Claims**. Nothing in this Plan shall be deemed to constitute an admission that any individual, corporation, partnership, trust, venture, governmental unit, or any other form of legal entity designated as being the Holder of a Claim is the Holder of an Allowed Claim, except as expressly provided in this Plan. The failure of Debtor to object to or examine any Claim for purposes of voting on the Plan shall not be deemed a waiver of Debtor's rights to object to or reexamine such Claim in whole or in part.

**Section 9.13   No Distributions Pending Allowance**. Except as otherwise provided in the Plan, no Distributions will be made on account of any Claim or portion thereof that is a Disputed Claim unless and until such Claim becomes an Allowed Claim.

## ARTICLE X.  CONDITIONS PRECEDENT

**Section 10.01 Conditions to Confirmation**. The following are conditions precedent to confirmation of this Plan that may be satisfied or waived in accordance with section 10.03 of this Plan:

    (a)  The Bankruptcy Court shall have approved the Disclosure Statement with respect to this Plan; and

    (b)  The Confirmation Order shall have been signed by the Bankruptcy Court and entered on the docket of the Bankruptcy Case.

**Section 10.02 Conditions to the Effective Date**. The following are conditions precedent to the occurrence of the Effective Date, each of which may be satisfied or waived in accordance with section 10.03 of this Plan:

    (a)  The Confirmation Order shall not have been stayed as of the Effective Date; provided, however, notwithstanding Bankruptcy Rule 3020(e) or any similar provision of law, the Confirmation Order shall be effective immediately upon its entry, and time is of the essence with respect to the occurrence of the Effective Date, which shall in no event be later than January 5, 2026, absent the prior written consent of JDA.

**Section 10.03 Waiver of Conditions to Confirmation or Effectiveness**. The conditions set forth in section 10.01 and section 10.02 of this Plan may be waived, in whole or in part, by Debtor without any notice to any other parties-in-interest or the Bankruptcy Court and without a hearing.

## ARTICLE XI.  EFFECT OF PLAN CONFIRMATION

**Section 11.01 Binding Effect.** On and after the Effective Date, and following confirmation by the Bankruptcy Court, the Plan shall be legally binding upon and inure to the benefit of Debtor, the Estate, the Holders of Claims, the Holders of Equity Interests, and their respective successors and assigns, even if they voted to reject the Plan.

**Section 11.02 Vesting of Property in Reorganized Debtor**. Pursuant to § 1141(b) of the Bankruptcy Code, confirmation of this Plan vests all remaining property of the Estate with the Reorganized Debtor as of the Effective Date. Except as otherwise explicitly provided in the Plan, on the Effective Date, all property comprising the Estate (excluding property that has been abandoned pursuant to an order of the Bankruptcy Court) shall vest in Reorganized Debtor as of the Effective Date, free and clear of all Claims, liens, charges, encumbrances, rights and interests of creditors, except as specifically provided in the Plan. For the avoidance of doubt, the collateral, and proceeds of sale(s) of such collateral, of the Reorganized Debtor securing the JDA Claim shall remain subject to the lien and claim of the JDA to the same extent and in the same priority as such lien and claim were enforceable against the Debtor and the Debtor's Assets, until the JDA Claim is satisfied in accordance with the Plan.

Upon the occurrence of the Effective Date, all obligations, covenants, duties, and liabilities of the Debtor arising under or in connection with the Plan shall automatically become, and shall continue as, the obligations, covenants, duties, and liabilities of the Reorganized Debtor. The Reorganized Debtor shall be deemed to have assumed and agreed to perform all such obligations in accordance with their terms. In addition, the Reorganized Debtor shall remain bound by, and shall perform in accordance with, all contracts, documents, instruments, stipulations, agreements, and orders executed or entered into by the Debtor prior to the Effective Date (including, without limitation, the JDA Loan Documents, the Escrow Agreement, and all related documents), as if the Reorganized Debtor were the original party thereto. The Debtor shall remain liable for, and the Reorganized Debtor shall be jointly and severally liable for and perform, all obligations of the Debtor under the Plan, the JDA Loan Documents, and any other related agreements or instruments, according to their respective terms. Neither any provision of this Plan, nor the confirmation of this Plan, nor the occurrence of the Effective Date shall operate as, or be deemed to constitute, a novation, discharge, satisfaction, or release of any obligations or liabilities of Debtor, all of which shall remain in full force and effect in accordance with their terms unless expressly modified by this Plan or the Confirmation Order.

**Section 11.03 Reorganized Debtor's Right to Operate Unsupervised**.  As of the Effective Date, the Reorganized Debtor may manage its operations and use, acquire, and dispose of property and settle and compromise Claims without the supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and the Confirmation Order.

**Section 11.04 Discharge**. Pursuant to § 1141(d) of the Bankruptcy Code, except as otherwise specifically provided in this Plan or in the Confirmation Order, the Distributions and rights that are provided in this Plan to Holders of Allowed Claims shall be in complete satisfaction, discharge, and release of all Claims, whether known or unknown, against Debtor, the Estate, or the Reorganized Debtor. The Reorganized Debtor will not have any liabilities related to any Claims except those expressly assumed under this Plan.

**Section 11.05 Injunction**. Upon entry of a Confirmation Order in this case, the Confirmation Order shall act as a permanent injunction against any Person commencing or continuing any action, employment of process, or act to collect, offset, or recover any Claim provided for under this Plan against Debtor or the Reorganized Debtor or against any property of Debtor or Reorganized Debtor or any property otherwise pledged as collateral against such Claim provided for under this Plan, except as provided for in this Plan.

**Section 11.06 Exemption from Certain Transfer Taxes and Recording Fees**. Pursuant to section 1146 of the Bankruptcy Code, any transfer from Debtor or the Reorganized Debtor to any other Person or entity pursuant to or in contemplation of this Plan, or any agreement regarding the transfer of title to or ownership of any of the real or personal property held by Debtor or Reorganized Debtor will not be subject to any document recording tax, stamp tax, conveyance fee, sales tax, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment.

## ARTICLE XII.  GENERAL PROVISIONS

**Section 12.01 Headings**. The headings of the articles, sections and subsections of this Plan are inserted for convenience only and shall not affect the interpretation hereof.

**Section 12.02 Notices**. Any notice required or permitted to be provided to the Reorganized Debtor under the Plan shall be in writing and served by overnight courier service or by certified mail, return receipt requested, addressed as follows:

To Reorganized Debtor:

Onic Corp.
7455 Howells Mill Road
Erhardt, South Carolina 29081

with a copy to:

Ceci Christy
Rountree Leitman Klein & Geer, LLC
2987 Clairmont Road
Suite 350
Atlanta, GA 30329

Neil C. Robinson, Jr.
MaynardNexsen
205 King Street
Suite 400
Charleston, South Carolina 29401

Should either the Reorganized Debtor or its counsel's address change, the applicable party shall notify in writing creditors then receiving payments under the Plan.

**Section 12.03 Amendments and Modifications**. This Plan may not be altered, amended, or modified without the written consent of Debtor and JDA. Debtor may withdraw this Plan at any time only with the prior written approval of JDA and Matsco.

**Section 12.04 Revocation of Plan**. Debtor reserves the right to revoke and/or withdraw this Plan, subject to receiving the prior written consent of JDA, at any time prior to the entry of the Confirmation Order, and upon such revocation and/or withdrawal, this Plan shall be deemed null and void and of no force and effect.

**Section 12.05 Conflicts with Disclosure Statement**. If provisions of the Disclosure Statement and provisions of this Plan conflict, the terms of this Plan shall govern.

**Section 12.06 Retention of Property of the Estate**. Except to the extent disposed of in accordance with the provisions of this Plan, the Reorganized Debtor shall retain all of the property of the Estate within the meaning of § 541 of the Bankruptcy Code.

**Section 12.07 Severability**. If any section or provision of this Plan is found to be contrary to law or unenforceable, then at the option of the Reorganized Debtor and JDA, such section or provision shall be deemed no longer a part of this Plan.

**Section 12.08 Continuation of all Retiree Benefits**. To the extent applicable to the Reorganized Debtor, all retiree benefits, as that term is defined in Section 1114 of the Bankruptcy Code, shall be continued in accordance with § 1129(a)(13) of the Bankruptcy Code.

**Section 12.09 Tax Consequences**. Tax consequences resulting from confirmation of the Plan can vary greatly among the various Classes of Creditors and Holders of Equity Interests, or within each Class. Significant tax consequences may occur as a result of confirmation of the Plan under the Internal Revenue Code and pursuant to state, local, and foreign tax statutes. Because of the various tax issues involved, the differences in the nature of the Claims of various Creditors, the taxpayer status and methods of accounting and prior actions taken by Creditors with respect to their Claims, as well as the possibility that events subsequent to the date hereof could change the tax consequences, no specific tax consequences to any Creditor or Holders of an Equity Interest are represented, implied, or warranted. The Plan Proponent assumes no responsibility for the tax effect that consummation of the Plan will have on any given Holder of a Claim or Equity Interest. Holders of Claims or Equity Interests are strongly urged to consult their own tax advisors covering the federal, state, local, and/or foreign tax consequences of the Plan to their individual situation.

**Section 12.10 Applicable Law**. Except to the extent that the Bankruptcy Code or Bankruptcy Rules are applicable, the rights and obligations arising under this Plan shall be governed by the laws of the State of Georgia.

**Section 12.11 Retention of Jurisdiction by the Bankruptcy Court**. Until this Bankruptcy Case is closed and a final decree issued, the Bankruptcy Court shall retain jurisdiction over all matters arising out of or relating to this Bankruptcy Case, including, but not limited to, the following matters:

(a)  To determine the allowance or classification of Claims or Equity Interests under this Plan and to determine any objections thereto;

(b)  To construe and to take any action to enforce this Plan and to issue such orders as may be necessary for the implementation, execution, and consummation of this Plan;

(c)  To determine all applications for allowance of compensation or reimbursement of expenses;

(d)  To determine any other request for payment of Administrative Claims;

(e)  To resolve any dispute regarding the implementation or interpretation of this Plan;

(f)  To determine any and all motions pending as of the Confirmation Date for the rejection, assumption or assignment of executory contracts or unexpired leases and the allowance of any Claim resulting therefrom;

(g)  To determine all applications, motions, adversary proceedings, contested matters and other litigated matters that may be pending in the Bankruptcy Court on or initiated after the Effective Date;

(h)  To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(i)  To modify the Plan pursuant to § 1127 of the Bankruptcy Code, or to remedy any apparent nonmaterial defect or omission in this Plan, or to reconcile any nonmaterial inconsistency in this Plan so as to carry out its intent and purpose;

(j)  To enter an order or final decree closing this Bankruptcy Case;

(k)  To determine matters under § 505 of the Bankruptcy Code relating to any tax for which the Reorganized Debtor may be liable;

(l) To consider and act on the compromise and settlement of any claim against Debtor or Debtor-in-Possession or its Estate;

(m) To determine all questions and disputes regarding title to the assets of Debtor, Debtor-in-Possession, the Estate, or the Reorganized Debtor; and

(n) To construe, enforce and resolve all questions and disputes relating to employment agreements existing or approved by the Bankruptcy Court at or prior to Confirmation.

**Section 12.12 Final Decree**. The Bankruptcy Court may, upon application of the Reorganized Debtor, at any time after the Effective Date and "substantial consummation" of the Plan as defined in § 1101(2) of the Bankruptcy Code, enter a final decree in the Bankruptcy Case, notwithstanding the fact that additional funds may eventually be distributed to parties-in-interest. In such event, the Bankruptcy Court may enter an order closing this Bankruptcy Case pursuant to § 350 of the Bankruptcy Code; provided, however, that (a) the Reorganized Debtor shall continue to have the rights, powers, and duties set forth in this Plan; (b) any provision of this Plan requiring the absence of an objection shall no longer be required, except as otherwise ordered by the Bankruptcy Court; and (c) the Bankruptcy Court may, from time to time, reopen the Bankruptcy Case if appropriate for any of the following purposes: (i) administering Assets; (ii) entertaining any adversary proceedings, contested matters; or applications Debtor has brought or will bring with regard to the liquidation of Assets and the prosecution of Causes of Action; (iii) enforcing or interpreting this Plan or supervising its implementation; or (iv) for other cause. The Reorganized Debtor shall be authorized to reopen the Bankruptcy Case for purposes of obtaining a discharge after entry of the final decree and the fee associated with the attendant motion to reopen the Bankruptcy Case shall be waived, and the Reorganized Debtor shall not be responsible for payment of such to the clerk of the Bankruptcy Court.

Dated: October 22, 2025

ROUNTREE LEITMAN KLEIN & GEER, LLC

*/s/ Ceci Christy*
Ceci Christy
Georgia Bar No. 370092
Century Plaza I
2987 Clairmont Road, Suite 350
Atlanta, Georgia 30329
(404) 584-1238 Telephone
cchristy@rlkglaw.com
*Attorneys for Debtor*

EXHIBIT A

Onic, Corp.
7455 Howells Mill Rd
Erhardt, SC 29081


October 22, 2025

jjacoby@jacobydevelopment.com

Jacoby Development, Inc.
8200 Roberts Drive
Suite 475
Atlanta, GA 30350
Attention: James F. Jacoby

Re:    <u>JDI Cumberland Inlet, LLC, a Georgia limited liability company</u>

Dear Jim:

This Letter of Intent (this "**LOI**") sets forth the material terms upon which Jacoby Development, Inc., a Georgia corporation ("**Seller**") and Onic, Corp, a South Carolina company or its assignee ("**Purchaser**") will enter into a transaction for the issuance by Seller to Purchaser 100% of Seller's new membership interests in the JDI Cumberland Inlet, LLC (collectively, the "**Equity Interests**") pursuant to a confirmed chapter 11 plan of liquidation (the "**Plan**") in In re JDI Cumberland Inlet, LLC, Case No. 25-55072-SMS (the "**Bankruptcy Case**"), pending in the United States Bankruptcy Court (the "**Court**") for the Northern District of Georgia. Purchaser's purchase of the Equity Interests will be pursuant to a membership interest purchase agreement (the "**MIPA**").

1. <u>JDI Cumberland Inlet, LLC and the Property</u>: Purchaser will acquire all of Seller's Equity Interests in JDI Cumberland Inlet, LLC ("**Debtor**"), a Georgia limited liability company. Debtor owns approximately 1300 acres of undeveloped land in Camden County, Georgia, which land is more particularly described in <u>Exhibit A</u> attached hereto (the "**Property**"), together with all of Seller's right, title and interest in and to (a) all rights, benefits, privileges, easements, tenements, hereditaments, rights-of-way and other appurtenances on the Property or in any way appertaining thereto (including, without limitation, all appurtenant easements over any adjacent properties), (b) all air rights, surface rights, all rights of lateral and subjacent support, and all water, gas, oil, coal, mineral and mining rights held by Seller with respect to the Property, including, without limitation, all rights of Seller, if any, in and under all water, gas, oil, coal, mineral or mining leases and/or contracts and any income thereunder with respect to any water, gas, oil, coal, mineral or mining rights with respect to the Property, whether or not the wells producing such income are located on the Property, (c) all strips and gores and any land lying in the bed of any street, road or alley, open or proposed, in front of, at a side of or adjoining such Property, (d) all permits, licenses, entitlements and approvals by any governmental authority that relate to the Property, and (e) all site plans, surveys, plans and specifications, soil and substrata studies, architectural drawings, engineering plans and studies, mechanical plans,

[Page **1** of **6**]

Onic, Corp.
7455 Howells Mill Rd
Erhardt, SC 29081

feasibility studies, conceptual designs, and other plans in Seller's possession which relate to the Property (the items described in the foregoing clauses (a), (b), (c), (d) and (e), together with the Property, are collectively referred to as the "**Property**").

2.  <u>Consideration</u>: The consideration (the "**Consideration**") for Seller's membership interests in the Debtor shall be as follows:

    a.  Indebtedness of Debtor to be paid off by Purchaser at Closing (which will be the Effective Date of the Plan):
        i.   $10,134,270.03 to the Joint Development Authority of Camden County ("**JDA**") to satisfy outstanding Bonds;
        ii.  $1,049,561.64 to Matsco, Incorporated to satisfy outstanding loan;
        iii. Consideration necessary to satisfy the negotiated bligation to Safe and Green Development Corp., fka SG Development Corp. in cash or other consideration;
        iv.  $113,167.40 to the Camden County Tax Commissioner;
        v.   $25,000.00 to the City of St. Marys;
        vi.  Other identified secured or priority claims and liens disclosed and approved by Purchaser; and
        vii. Any other claims to be paid in full in cash under the Plan (collectively, the "**Identified Debts**").

    b.  $20,000,000 to Seller, payable at closing, January 5, 2026.

    For the avoidance of doubt, regardless of the timing of the Effective Date of the Plan, Purchaser shall satisfy the outstanding Bonds in full in cash on or before January 5, 2026. In the event that such satisfaction occurs in advance of the Effective Date, Purchaser shall be subrogated to the Bonds, with full rights of substitution, pending the occurrence of the Effective Date of the Plan.

    During the Due Diligence Period (as hereinafter defined), Seller will provide Purchaser with documentation evidencing all creditors with liens and debt owed by Debtor and/or encumbering the Property, the Seller shall have the right to negotiate directly with any such creditors with respect to such outstanding liens and debt.

3.  <u>Bankruptcy Court Approval</u>: Debtor filed its Chapter 11 Plan of Reorganization in the Bankruptcy Case on September 3, 2025 (the "<u>Plan</u>") in the Bankruptcy Case. The hearing on confirmation of the Plan is scheduled for October 27, 2025 (the "<u>Confirmation Hearing</u>"). Debtor shall file an amended Plan on or before October 22, 2025 which shall attach a binding agreement incorporating the terms set forth herein between Debtor, Seller, and Purchaser (the "<u>Amended Plan</u>"). The Debtor's Amended Plan will provide for

[Page **2** of **6**]

Onic, Corp.
7455 Howells Mill Rd
Erhardt, SC  29081

payment in full of Seller's secured and unsecured creditors on the Effective Date of the Amended Plan.

4. <u>Conditions Precedent to the Confirmation Hearing</u>: (a) Seller and Purchaser shall execute a binding term sheet on October 22, 2025 to be filed as an exhibit to the Amended Plan; (b) Purchaser shall provide proof of funds in advance of the Confirmation Hearing; (c) Debtor shall file the Amended Plan in the Bankruptcy Case on October 22, 2025, which Amended Plan shall attach the binding term agreement as an exhibit; and (d) Purchaser and Seller shall have executed the MIPA that shall be presented to the Bankruptcy Court at the Confirmation Hearing. The Debtor shall reject the Development Agreement between Debtor and the JDA in the Amended Plan, and the JDA shall waive any claim arising from such rejection.

5. <u>Conditions Precedent to the Effective Date of the Amended Plan</u>: Purchaser's obligation to purchase the Debtor is subject to the following conditions: (a) Seller shall immediately provide Purchaser access to all of Seller's books and records, without limitation; provided, however, that Seller and Purchaser shall execute a commercially reasonable common interest agreement with respect to materials protected by attorney-client privilege; (b) Seller shall immediately provide Purchaser with access to any physical plan of Debtor and the Property; and (c) the Court shall have confirmed the Amended Plan pursuant to section 1129 of the United States Bankruptcy Code.

6. <u>Certain Payments and Date of Closing:</u> The payment to the JDA will occur on or before January 5, 2026; however, all other payments under the Amended Plan will occur as set forth in the Amended Plan. The closing (the "**Closing**") will occur on or before January 5, 2026 which will be the Effective Date of the Amended Plan.

7. <u>Prorations, Adjustments and Costs:</u>  Adjustments will be made between Purchaser and Seller as of the date of the Closing (on the basis of the actual number of days elapsed over the applicable period) for real estate taxes, personal property taxes, water, sewer and other utility charges as well as other customarily adjusted items. Any and all state or local transfer, conveyance and sales taxes and fees related to the sale of the Debtor shall be paid by Seller. The premium for the title policy will be paid by Purchaser. The parties shall split equally any fees due to Escrow Agent. All other closing costs will be paid by either Seller or Purchaser, consistent with the local custom.

8. <u>Seller Covenants</u>:  Seller will keep Purchaser informed about the Debtor and the Property and continue to operate the same in the same manner as it has been operated prior to execution of the MIPA pending the Closing. Any transactions outside of the ordinary course of business and any filings with the Bankruptcy Court shall require approval of Purchaser. The MIPA will contain other covenants typical for transactions similar to the transaction contemplated by the MIPA.

[Page **3** of **6**]

Onic, Corp.
7455 Howells Mill Rd
Erhardt, SC  29081

9.  Assignability: Purchaser may assign its rights under the MIPA to a partnership, limited liability company, or other entity owned or controlled by Purchaser or its affiliates.

10. Expenses: Seller and Purchaser shall be responsible for their own expenses in connection with this transaction. (including, without limitation, reasonable, out-of-pocket, documented professional and other expenses)

11. Brokerage Commissions: Both Seller and Purchaser represent to the other that it has not dealt with any broker or finder in connection with the Equity Interests and/or the Property and agrees to indemnify the other party against any claims, losses, or damages arising due to a breach of the foregoing.

12. Confidentiality: Each of Seller and Purchaser shall maintain the confidentiality of the terms and provisions of this LOI as well as the existence of this LOI, except (i) as required by law, regulation, court, subpoena, legal process, regulatory or governmental authority, or the internal compliance procedures of such party, (ii) for disclosures to such party's affiliates and its and their respective principals, directors, employees, consultants, representatives, accountants, agents, advisors, attorneys, partners, lenders, investors and co-investors, and (iii) in connection with confirmation of Debtor's Plan in the Bankruptcy Case. The foregoing shall not limit, release or waive any of the covenants, terms or conditions set forth in any preexisting confidentiality agreement executed by the parties hereto.

13. Binding: This LOI is binding and enforceable by Seller and Purchaser.  To the extent Purchaser fails to close, Seller's remedy shall be that Purchaser forfeits all monies paid up until the event of default as agreed liquidated damages.

14. Seller's Covenants: On or before October 22, 2025, Seller shall present Purchaser the Amended Plan, which shall be filed following approval by Purchaser.  From the date hereof until this term sheet is terminated in accordance with its terms, Seller shall use its commercially reasonable efforts to pursue, diligently, the prosecution and confirmation of such Amended Plan, provided that the Debtor is contemporaneously pursuing, diligently, the prosecution and confirmation of such Amended Plan.

15. Administrative Contract: Parties agree to negotiate a consultant contract with Jacoby Development, Inc. post-closing for a defined period of time based on the scope of work and at established industry rates.

16. Commissions & Project Participation: Parties agree to negotiate a separate contract after Closing for market rate commissions and project participation in the form of profits derived from the development of the project and parcels.

Onic, Corp.
7455 Howells Mill Rd
Erhardt, SC  29081

16. <u>Commissions & Project Participation</u>: Parties agree to negotiate a separate contract after Closing for market rate commissions and project participation in the form of profits derived from the development of the project and parcels.

If the foregoing is in accordance with your understanding, please execute one copy hereof in the space indicated below and return it to me.

Sincerely,

Edwin R. Ginn, III
Member, Duly Authorized

ACCEPTED AND AGREED TO:

Jacoby Development, Inc., a Georgia corporation

By: _____
Name: James F. Jacoby
Title: Chairman

Onic, Corp.
7455 Howells Mill Rd
Erhardt, SC 29081


ACCEPTED AND AGREED TO:

Jacoby Development, Inc., a Georgia corporation


By. _____

Name: James F. Jacoby

Title: Chairman


[Page 7 of 8]

Onic, Corp.
7455 Howells Mill Rd
Erhardt, SC  29081

<u>Exhibit A</u>

To be added

Legal Description of
Property